UNITED STATES of America for the Use and Benefit of Leonardo MARIANA, Plaintiff,

v.

PIRACCI CONSTRUCTION CO., INC, and Aetna Casualty & Surety Co., Defendants.

Civ. A. No. 75–0342.

United States District Court, District of Columbia.

Sept. 12, 1975.

See also, D.C., 405 F.Supp. 908.

Francis J. Pelland, Herman M. Braude, Washington, D. C., for plaintiff.

Harold F. Blasky, Laurence Schor, Washington, D. C., for defendants.

MEMORANDUM AND ORDER

GESELL, District Judge.

This is a suit brought under the Miller Act [1] by use plaintiff Mariana, a subcon-

1. 40 U.S.C. § 270a *et seq.* (1970, Supp.1975).

tractor, against the prime contractor, Piracci, and its surety, Aetna. Aetna has moved for partial summary judgment and the issue presented, which is purely a legal issue at this stage, was fully briefed and argued. The question for decision is whether a Miller Act surety is liable to a subcontractor for the increased costs of performing the subcontracted work where additional costs for labor and material are caused solely by delay in the commencement and completion of the job and the delay is not attributable to the subcontractor.

█ The federal project here involved concerns construction of the Joseph H. Hirshhorn Museum and Sculpture Garden in Washington, D. C. Piracci obtained the contract on a bid basis and in computing its bid included the amount it had agreed on with use plaintiff for the performance of the subcontract work. The job was then delayed nineteen months primarily through a controversy between the general contractor and the General Services Administration.[2] When the work eventually went forward use plaintiff found it had increased costs caused by the delay, including standby expenses and added outlays for materials and labor required by the job. In particular, five categories of increased actual expenses are claimed in this suit: (1) increased cost of labor due to performance of the work at a period when higher wage rates were in effect; (2) increased cost of materials due to higher prices at the later time; (3) increased labor costs due to inefficient performance stemming from the piecemeal, disjointed method of work caused by the delay; (4) increased cost of field operations due to the longer time of actual job performance resulting from the delay; (5) increased indirect expenses, composed of home office overhead and general and administrative (G&A) expenses.

Aetna takes the position that it is bound on its Miller Act bond[3] only to pay the amount specified in the subcontract for the work, and this amount has already been paid. Aetna argues the increased costs of performing must be met solely by a separate contract action between use plaintiff and the general contractor, and the surety must be relieved of further obligation. Use plaintiff claims to the contrary, stating that the Miller Act by its terms entitles it to be reimbursed by the surety for these added costs. No claim is made for lost or expected profits, only labor and materials and related expenses incurred.

2. For purposes of this motion, it has been agreed that the delay was not the fault of use plaintiff. The issue of use plaintiff's responsibility for the delay, in whole or in part, will be open for consideration at trial.

The General Services Administration's Board of Contract Appeals has determined that at least some of the delay is attributable to the Government. *Appeal of Piracci Construction Co.,* GSBCA–3477 (May 30, 1974), *denial of motion to amend,* (Aug. 29, 1974), *denial of motion for reconsideration,* (Aug. 29, 1974). However, whether responsibility for the increased costs rests on the Government or Piracci, or both, Aetna will be liable on the payment bond if use plaintiff's claims are cognizable under the Miller Act. *See, e. g., Wynne v. United States ex rel. Mid-States Waterproofing Co.,* 382 F.2d 699 (10th Cir. 1967); *United States for Use of Ardmore Concrete Material Co. v. Williams,* 240 F.2d 561 (10th Cir. 1957). Of course, Aetna may in turn have causes of action against Piracci or the United States. But "[t]he very purpose of the payment bond required under the Miller Act is to shift the ultimate risk of nonpayment from workmen and suppliers to the surety." *American Surety Co. v. Hinds,* 260 F.2d 366, 368 (10th Cir. 1958), *disapproved on other grounds, Pearlman v. Reliance Insurance Co.,* 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962).

3. 40 U.S.C. § 270a(a)(2) (1970). The bond reads in pertinent part:

[I]f the Principal [Piracci] shall promptly make payment to all persons supplying labor and material in the prosecution of the work provided for in said contract, and any and all duly authorized modifications of said contract that may hereafter be made, notice of which modification to the Surety(ies) [Aetna] being hereby waived, then the above obligation [of Aetna] shall be void and of no effect.

■ The Miller Act provides:

(a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under section 270a of this title and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him . .. 40 U.S.C. § 270b(a) (1970).

The purpose of this statute has been explained by the Supreme Court:

Section 270a(a)(2) of the Miller Act establishes the general requirement of a payment bond to protect those who supply labor or materials to a contractor on a federal project. Ordinarily, a supplier of labor or materials on a private construction project can secure a mechanic's lien against the improved property under state law. But a lien cannot attach to government property . . ., so suppliers on government projects are deprived of their usual security interest. The Miller Act was intended to provide an alternative remedy to protect the rights of these suppliers. *F. D. Rich Co. v. United States for the use of Industrial Lumber Co., Inc.,* 417 U.S. 116, 121–22, 94 S.Ct. 2157, 2161, 40 L.Ed.2d 703 (1974).

Although enacted as a replacement for state lien law, the Miller Act provides a federal cause of . action, and the scope and substance of recovery are governed by federal rather than state law. *F. D. Rich, supra,* 417 U.S. at 126–31, 94 S.Ct. 2157. "The Miller Act is '. . . highly remedial [and] entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects.' *MacEvoy, supra [Clifford F. MacEvoy Co. v. United States ex rel. Tomkins Co.],* 322 U.S. [102] at 107, 64 S.Ct. [890] at 893 [88 L.Ed. 1163 (1944)]." *F. D. Rich, supra,* 417 U.S. at 124, 94 S.Ct. at 2162. Under the statute, use plaintiff is entitled to the "sum or sums justly due him."[4] By its terms, however, the Miller Act is limited to claims for "labor or material [furnished] in the prosecution of the work provided for in [the] contract . . .." The issue thus becomes whether delay costs as alleged in this case are expenses for "labor or material" within the intendment of the statute. The Court holds that the Miller Act surety is liable to a subcontractor for increased costs actually incurred due to delay for labor or material, to the extent such delay is not attributable to the subcontractor.

Several reasons support this conclusion. First, the claims asserted in this case are within the literal language of the statute, since the amounts sought are for out-of-pocket expenses for labor or materials that were furnished and used by the subcontractor in performing his contractual obligations.[5] Recovery in the instant circumstances would also promote the underlying purpose of the Miller Act: to afford the subcontractor the financial protection of an action against the surety. To deny relief would remit the use plaintiff to his remedy for breach of contract, and it was the inadequacy of such a remedy in the context of federal construction projects that prompted the enactment of the Miller

---

**4.** Notwithstanding a liberal construction and this statutory entitlement, however, the Miller Act does not establish an unlimited basis for relief. *See, e. g., F. D. Rich, supra* (prevailing use plaintiff not entitled to attorney's fees, even though in the absence of such an award the claimant is not fully recompensed).

**5.** Relief is not requested for items other than actual expenditures, such as lost profits.

Act. Moreover, there is a public interest in the smooth completion of these Government projects which is promoted by reducing the possibility that delay will frustrate the governmental objective due to disputes between the prime and its subs.

■ Moreover, the Miller Act, like the mechanic's lien for which it substitutes, is premised on "the equity in favor of those whose actual expenditure of work or utilization of material has enhanced the value of the property in question," *Arthur N. Olive Co. v. United States ex rel. Marino*, 297 F.2d 70, 72 (1st Cir. 1961). "The essential principle upon which the mechanic's lien rests is that of unjust enrichment," *In re Taylorcraft Aviation Corp.*, 168 F.2d 808, 811 (6th Cir. 1948), *overruled on other grounds*, *In re Kurtz Roofing Co.*, 335 F.2d 311 (6th Cir. 1964), *aff'd sub nom. United States v. Speers*, 382 U.S. 266, 86 S.Ct. 411, 15 L.Ed.2d 314 (1965). Applying equitable considerations, the Court finds that the expense of such beneficial and productive efforts be measured as of the time the work was actually performed. This accords with decisions under the Miller Act involving restitution or quantum meruit, in which it has been held that "the standard for measuring the reasonable value of the services rendered is the amount for which such services could have been purchased from one in the plaintiff's position *at the time and place the services were rendered.*" *United States for Use of Building Rentals Corp. v. Western Casualty and Surety Co.*, 498 F.2d 335, 338 (9th Cir. 1974) (emphasis added), *quoting United States for Use of Coastal Steel Erectors, Inc. v. Algernon Blair, Inc.*, 479 F.2d 638, 641 (4th Cir. 1973).

■ In the Court's view, the proper test under the Miller Act is whether the claim for relief is based on actual expenditures for labor or materials utilized in the performance of the subcontract. *See United States for Use and Benefit of Moran Towing Corp. v. Hartford Accident & Indemnity Co.*, 204 F.Supp. 353, 356 (D.R.I.1962). Use plaintiff's cause of action is not defeated by such technical exercises as analyzing whether the claim arose within or without the contract or by determining if the added costs were indispensible to satisfactory contractual performance.

Defendant Aetna relies primarily on *Arthur N. Olive Co. v. United States ex rel. Marino, supra*, 297 F.2d 70; *L. P. Friestedt Co. v. U. S. Fireproofing Co.*, 125 F.2d 1010 (10th Cir. 1942); and *United States to Use of Watsabaugh & Co. v. Seaboard Surety Co.*, 26 F.Supp. 681 (D.Mont.1938), *aff'd on other issue*, 106 F.2d 355 (9th Cir. 1939).[6] However, these cases are of no avail to defendant. Unlike the instant litigation, they dealt with attempts by subcontractors to recover from Miller Act sureties "unrealized gain or profit for breach" of contract, *Arthur N. Olive Co., supra*, 297 F.2d at 72. Here, use plaintiff performed and completed its contractual obligation, and no claim is made for lost profits; rather, compensation is sought only for actual out-of-pocket expenses.[7]

■ For the foregoing reasons, the Court holds that under the Miller Act a subcontractor may recover from the prime contractor's surety for delay costs for labor or materials furnished and used in the prosecution of the contracted work, where the subcontractor did not cause or contribute to the delay. Accordingly, defendant Aetna's motion for partial summary judgment is denied.

So ordered.

---

**6.** *See also United States for Use and Benefit of Pittsburgh-Des Moines Steel Co. v. MacDonald Construction Co.*, 281 F.Supp. 1010 (E.D.Mo. 1968).

**7.** In order to recover at trial, use plaintiff must be able to demonstrate with reasonable certainty and specificity the increased costs resulting from the delay. This is particularly important with respect to the claim for home office overhead and general and administrative expenses.

The Court here makes no determination as to what items are properly comprehended within the claim for "indirect expenses."