The UNITED STATES of America for the Use and Benefit of SUPERIOR INSULATION COMPANY, INC.

v.

ROBERT E. McKEE, INC. and Associated Indemnity Corporation and Fireman's Fund Insurance Company

v.

AETNA CASUALTY AND SURETY COMPANY.

Civ. A. No. 4–86–959–E.

United States District Court, N.D. Texas, Fort Worth Division.

Sept. 13, 1988.

Dan S. Boyd, Robert R. Gibbons, Johnson Swanson, Dallas, Tex., for plaintiffs; Randall F. Hafer, Patrick A. Thompson, Hubert J. Bell, Jr., Smith, Currie & Hancock, Atlanta, Ga., of counsel.

Joe F. Canterbury, Jr., Frederick Gover, Canterbury, Stuber, Elder & Gooch, C. Edward Fowler, Jr., Bailey and Williams, Dallas, Tex., for defendants.

## ORDER

MAHON, District Judge.

On June 22, 1988, at the close of Plaintiff's case, Defendants and Third Party Defendants orally presented a motion for a directed verdict which the Court carried along. After the trial, Defendants and Third Party Defendants filed motions for a judgment not withstanding the verdict. Plaintiff has responded to both motions. After a thorough review of the issues, the Court makes the following determinations.[1]

Plaintiff Superior is the sub-subcontractor on a construction project at Carswell Air Force Base in Fort Worth, Texas. Superior has sued Defendants McKee, the general contractor, *in its capacity as the principal on a surety bond created pursuant to the Miller Act,* and Associated Indemnity Corporation and Fireman's Fund Insurance Company, *as sureties on the bond.* 40 U.S.C. § 270a *et seq.* Plaintiff alleges that it has incurred increased labor costs resulting from *inter alia* improper scheduling which caused it to perform work in an inefficient, uncoordinated and piecemeal manner. There is evidence of improper scheduling by both the general contractor, McKee, and the subcontractor, Kinney.[2] Plaintiff Superior only sued McKee and the sureties. Superior did not sue Kinney or Aetna. Aetna is the surety on a performance bond under which Aetna agreed to complete the work assigned to Kinney if Kinney did not do so.

In bidding on the project, Superior made a calculation of the number of hours of labor were necessary for it to complete the project. Superior claims that its calculation was accurate. Superior claims that it had to incur more hours than anticipated because of improper scheduling by McKee. The evidence indicates that there was improper scheduling by Kinney as well as McKee.

The Defendants are contending that they can only be liable for the increased labor costs to Superior which were caused by actions on the part of McKee and not by the actions of other parties. The Defendants further contend that Superior has the burden of apportioning the increased labor costs between the various causes of the increased labor costs. Defendants assert that Plaintiff has provided no evidence of apportionment of the damages between McKee and the other potential causes of Superior's increased labor costs.

This case is different than many other cases that are decided under the Act. First, several of the cases decided under the Miller Act were based upon interpretations of contractual provisions in contracts between the parties. *See e.g. United States v. SCI, Inc.,* 828 F.2d 671 (11th Cir.1987); *United States v. J.H. Copeland & Sons Const., Inc.,* 568 F.2d 1159 (5th Cir.1978). Plaintiff Superior has not brought suit based on any contract.

Second, some cases do not involve an issue of causation or culpability. For instance, when a materialman supplies material for which he is not paid, he only needs to prove four elements to recover:

(1) the materials were supplied in prosecution of the work provided for in the contract;

(2) he has not been paid;

(3) he had a good faith belief that the materials were intended for the specified work; and

(4) the jurisdictional requisites were met.

*United States v. Avanti Const., Inc.,* 750 F.2d 759, 761 (9th Cir.1984). *See also Miller Equipment Co. v. Colonial Steel & Iron Co.,* 383 F.2d 669 (4th Cir.1967).

Unlike *Avanti Const.* and *Miller Equipment* cases, in this case, there was a genuine question about who caused Plaintiff's increased labor costs. Plaintiff alleges that it need only prove its increased costs

---

**1.** This Court believes in the value of judicial candor. The Court finds that the positions of both parties are very persuasive and this case presents a very close question.

**2.** Kinney has filed for bankruptcy and is not a party to this case. Aetna Casualty and Surety Company is the surety for Kinney and it is a party to this suit. The surety bond of Kinney is not a Miller Act bond. Rather it is a bond under which Aetna agreed to complete the work required by Kinney if Kinney failed to complete such work.

and not who caused such increased costs. Defendants contend that Plaintiff must apportion the increased costs between the various entities that caused damage to Plaintiff.

Defendants rely heavily on a body of case law that has developed under the Miller Act which relates to delay damages—increased costs resulting from delays in completion of the project. Plaintiff contends that it is not requesting damages for delays in the completion of the project. Rather, Plaintiff is asking for increased labor costs incurred within the timeframe for completion of the project.

This Court finds the distinction made by the parties is not determinative. The important factor to this Court is that there is a question of causation in this case and this Court must determine who has the burden of proof as to this question. The holdings in the delay damage cases do afford some assistance in deciding this case.

■■■ A few basic principles will narrow the remaining issue in this case. First, a sub-subcontractor cannot recover against a general contractor, as principal on a bond, and the surety on the bond for increased labor costs which were caused by the sub-subcontractor himself. *United States for Use and Benefit of Mariana v. Piracci Const. Co., Inc.*, 405 F.Supp. 904, 906 (D.D.C.1975). Second, the sub-subcontractor can recover for increased labor costs caused by the general contractor. *United States for Use and Benefit of Otis Elevator Co. v. Piracci Const. Co., Inc.*, 405 F.Supp. 908, 909 (D.D.C.1975). Third, the sub-subcontractor (or a subcontractor) can recover against the general contractor and the Miller bond surety for increased labor costs caused by the Government. *United States for Use and Benefit of Mariana v. Piracci Const. Co., Inc.*, 405 F.Supp. 904, 905 n. 2 (D.D.C.1975). The reason that the sub-subcontractor is allowed such recovery is because the sub-subcontractor is not allowed to sue the Government. The only entity which can sue the Government is the general contractor—the entity with whom the Government contracted. *United States v. Williams*, 240 F.2d 561, 563 (10th Cir.1957).

The question left for this Court to decide is whether the general contractor and the surety can be liable to the sub-subcontractor for increased labor costs which are caused by an entity other than the sub-subcontractor, the general contractor or the Government. There are persuasive arguments on both sides.

Allowing the sub-subcontractor to recover against the general contractor and its surety is consistent with the principle that the Miller Act should be construed broadly to protect the laborers and materialmen who work and supply goods for Government projects. *F.D. Rich Co., Inc. v. United States ex rel. Industrial Lumber Co., Inc.*, 417 U.S. 116, 124, 94 S.Ct. 2157, 2162–63, 40 L.Ed.2d 703 (1974). In addition, courts have stated that the risk of nonpayment for goods and services provided on a Government project should be on the surety and not on the laborers or materialmen. *United States for Use and Benefit of Mariana v. Piracci Const. Co., Inc.*, 405 F.Supp. 904, 905 n. 2 (D.D.C.1975). Third, if the sub-subcontractor were not allowed to recover against the general contractor and the surety, then the sub-subcontractor would have to sue the party that caused it to incur the increased labor costs. In this case, since the sub-subcontractor is prevented from placing a lien on the Government's property, he is left only with a cause of action for breach of contract against the subcontractor who is bankrupt. This is the type of situation that the Miller Act was attempting to avoid. The Miller Act wanted to provide the laborers and materialmen with an alternative means of recovery other than a breach of contract claim under state law. *F.D. Rich Co., Inc. v. United States ex rel. Industrial Lumber Co., Inc.*, 417 U.S. 116, 121–22, 94 S.Ct. 2157, 2161–62, 40 L.Ed.2d 703 (1974).

Under state law, a laborer could obtain a lien against the private property on which he worked or provided material. *Id.* However, a laborer or materialman who works on a construction project on federal property is not able to file a lien against the property. The laborer or materialman could bring a cause of action against the

party which caused the increased labor or material costs. *Id.* However, that party may not be able to compensate the laborer or materialman for his loss. For this reason, the Congress enacted the Miller Act to provide the laborers and materialmen the protection they had under state law. *Id.*

The Defendants also present persuasive arguments. First, there are cases which hold that the general contractor and the surety cannot be liable unless the general contractor has caused some injury to the Plaintiff. *United States for Use and Benefit of Otis Elevator Co. v. Piracci Const. Co., Inc.,* 405 F.Supp. 908, 909 (D.D.C. 1975).

Second, allowing the sub-subcontractor to recover against the general contractor and surety runs afoul of the idea that one should not be liable for damages unless they are directly or indirectly caused by that entity.

Third, Plaintiff is in a better position to collect and present evidence as to the cause of its injury. As stated above, Plaintiff has the burden of proving those damages that were caused by entities other than itself. Defendants contend that it is logical for Plaintiff also to have the burden of proving who caused damages to the Plaintiff other than itself and the extent of the damages caused by entities other than itself.

Finally, the purpose of the Miller Act is only to put the laborers and materialmen in the position they would have occupied if they were working on a private and not a Government project. *F.D. Rich Co., Inc. v. United States ex rel. Industrial Lumber Co., Inc.,* 417 U.S. 116, 121–22, 94 S.Ct. 2157, 2161–62, 40 L.Ed.2d 703 (1974). If Plaintiff was working on a private project, Plaintiff would have the burden of proving who caused the injury to Plaintiff and Plaintiff would have to sue that entity in order to recover for the injury caused by that party. The general contractor and the surety would not be liable for the damages caused by another entity. If the sub-subcontractor was allowed to recover against the general contractor and the surety for injuries not caused by the general contrac-

tor, then the sub-subcontractor would be in a better position then they would be in under state law.

■ This Court finds that the Plaintiff's arguments are most persuasive in this case. As to Defendants' first contention, the general contractor and the surety can be liable for Plaintiff's damages when the general contractor is not the cause of Plaintiff's damages. For instance, under the Miller Act, the general contractor and the surety can be liable when the Government caused the damage.

As to Defendants' second and third arguments, the Court finds that these arguments are negated by the purpose of the Miller Act which is to protect laborers and materialmen through the surety bond.

Defendants' final argument is that the laborers and materialmen are placed in a better position under the Miller Act than they would be under state law. This Court disagrees. If Plaintiff were suing on its contract with another party under state law, Plaintiff would have the burden of proving who the entity or entities were that caused Plaintiff's damage. Plaintiff would also have to prove the amount of damage that each defendant caused in order to recover from that defendant.

■ The Miller Act is *not* the replacement for Plaintiff's breach of contract remedies under state law. Rather, the Miller Act is the substitute for Plaintiff's right to obtain a mechanic's lien on the property on which Plaintiff supplied labor and material. Mechanics liens, under state law, and the Miller Act, under federal law, protect the laborers and materialmen when they are not able to recover under contract law.

If a laborer or materialman placed a mechanic's lien on a piece of property for labor or material which properly was provided on the project, the owner of the property would have to pay the laborer or materialman in order to lift the lien. If the owner wanted to recover from the party who caused the increase in labor or material costs, then the burden would be on the owner to determine who caused the increased labor or material costs.

■ Under the Miller Act, the same burdens of proof exist. It is essential to understand that the general contractor and the surety are sued solely in their capacity as principal and surety on the Miller Act bond. In this capacity, they are equivalent to the property owner under state law. They have to prove who caused damage to Plaintiff other than those damages which Plaintiff caused itself. Under state law the property owner has the burden, and under the Miller Act the burden is on the general contractor, as principal, and the surety.

The Court recognizes that one justification for a mechanics' lien is to assure that the property owner is not unjustly enriched. However, if a contractor fails to pay a subcontractor, the subcontractor can obtain a lien against the property. This is true even if the property owner paid the contractor, but the contractor failed to pay the subcontractor. In this situation, the property owner was not unjustly enriched since he paid the contractor the amount to which the property owner and the contractor agreed. However, state law still allows the subcontractor to obtain a lien on the property.[3]

The Court also recognizes that the contractor and the property owner are better protected under state law because of the notice provisions in Texas than the principal and the surety are under the Miller Act. Property owners and general contractors would not be made aware of the subcontractors' or sub-subcontractors' problems until much later under the Miller Act. Because of this delay, one could argue that it should not be the Defendants' burden to determine who caused the problems to the Plaintiff.

The notice provisions under the Miller Act are longer than the notice provisions under Texas law. Under the Miller Act, the materialman or laborer must give notice of his claim within 90 days after the completion of his work on the project. 40 U.S.C. § 270b(a). Under Texas law, the laborers and materialmen must give notice to the *general contractor* within 36 days after the 10th of the month after the month in which the labors or materials are supplied. Tex.Prop.Code Ann. § 53.056(b) (Vernons 1984). The laborers or materialmen must give notice to the *property owner* within 90 days from the 10th of the month after the month in which the labors or materials are supplied. Tex.Prop.Code Ann. § 53.056(b) (Vernons 1984). The Texas notice provisions require that notice be given shortly after the work is performed on a monthly basis whereas the Miller Act notice provisions would allow a laborer or materialman until 90 days after the laborer or materialman has completed his work on the project.

If the notice provisions are too long under the Miller Act, the correct forum to address this problem is the legislature. The fact that the notice provisions in one state, Texas, happen to be shorter than those under the Miller Act does not mean that the principal and surety should not have the burden of proving who caused Plaintiff's damages, other than the Plaintiff himself,[4] just as the property owner under state law must do.

For the above stated reasons, the Court finds that Defendant's motion for judgment not withstanding the verdict is DENIED on its argument that Plaintiff has the burden of apportioning damages between the parties. The Court also finds no merit to Defendants' and Third Party Defendant's other reasons for granting a motion for judgment not withstanding the verdict.

## ON RECOVERY OF COSTS

■ Plaintiff Superior seeks to recover its costs of action. Defendants McKee, Associated Indemnity Corporation and Fireman's Fund Insurance Company have

---

**3.** This same logic would apply if a subcontractor hired a sub-subcontractor and failed to pay the sub-subcontractor.

**4.** Plaintiff subcontractor or sub-subcontractor has the burden of proving that damage was caused by a party other than itself. If the principle and the surety allege that Plaintiff's damages were caused by itself, then the principle and surety would allege this as a defense. It is the Plaintiff's burden to prove that its damages where caused by an entity other than itself.

opposed Plaintiff Superior's request for costs. Rule 54(d) of the Federal Rules of Civil Procedure provides that the prevailing party may recover costs unless the court otherwise directs.

This Court finds that Plaintiff is entitled to recover its costs. "Under Rule 54(d) ... there is a strong presumption that the prevailing party will be awarded costs." *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir.1985). "[I]t is incumbent on the losing party to overcome th[e] presumption" that the prevailing party should be awarded costs. In this case, Defendants have not satisfied this burden.

However, this Court finds that Plaintiff should only recover costs commensurate with the amount of recovery awarded by the jury. *Studiengesellschaft Kohle v. Eastman Kodak Co.*, 713 F.2d 128, 131–32 (5th Cir.1983). In this case the jury award ($55,471.53) is a small fraction of the amount of relief requested by Plaintiff ($556,814.00).

Accordingly, the Court finds that Plaintiff is entitled to recover a portion of its costs. The Court directs Plaintiff to file a bill of costs with the Court within 15 days from the date of this Order. Defendants will have 15 days from the date the bill of costs is filed to file their opposition to the costs requested.

Signed this 13th day of September, 1988.