981 F.2d 414
 38 Cont.Cas.Fed. (CCH) P 76,358
 MAI STEEL SERVICE INC., a Kansas Corporation, Plaintiff-Appellee,
v.
BLAKE CONSTRUCTION COMPANY, Defendant,
and
Molnick's Inc., a Corporation, Defendant-Appellant.
MAI STEEL SERVICE INC., a Kansas Corporation, Plaintiff-Appellee,
and
Blake Construction Company; and Aetna Casualty & Surety
Company, Defendant-Appellee,
and
Commercial Union Insurance Company, Defendant-Appellee,
v.
MOLNICK'S INC., a Corporation, Defendant-Appellant.
 Nos. 88-6409, 88-6410.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 7, 1992.
Decided June 30, 1992.
 
 Robert S. Kilborne, San Diego, CA, for defendant-appellant.
 James L. Trachy, Anderson, McPharlin & Conners, Los Angeles, CA and Judah Lifschitz, Shapiro & Lifschitz, Washington, DC, for defendants-appellees.
 Oscar Irwin, Hillyer & Irwin, San Diego, CA, for the plaintiff-appellee.
 Appeal from the United States District Court for the Southern District of California.
 Before: PREGERSON, D.W. NELSON and THOMPSON, Circuit Judges.
 DAVID R. THOMPSON, Circuit Judge:
 
 
 1
 This appeal challenges a district court ruling that appellant Molnick's Inc., a steel installer on a federal construction project, cannot recover under either the prime contractor's Miller Act payment bond or the subcontractor's common law payment bond for its increased labor and material costs attributable to construction delays. We have jurisdiction under 28 U.S.C. § 1291 and we reverse. We also conclude that the prime contractor's surety is entitled to indemnification from the subcontractor's surety to the extent of its liability for Molnick's additional costs.
 
 FACTUAL BACKGROUND
 
 2
 The Department of the Navy hired Blake Construction Company to build a naval hospital in San Diego, California. Pursuant to the Miller Act, 40 U.S.C. § 270a-270d, Blake obtained two Miller Act bonds from Aetna Casualty Insurance. One bond guaranteed Blake's performance under its contract with the United States government. The other bond guaranteed payment to all persons supplying labor or materials to the project.[1]
 
 
 3
 Blake subcontracted with Mai Steel Services to fabricate and install the hospital's steel framework. Mai furnished a performance bond for $6,940,000, guaranteeing the satisfactory completion of the framework. It also provided a payment bond for the same amount. Commercial Union Insurance was the surety on both bonds.
 
 
 4
 Blake also subcontracted with Molnick's to install the hospital's steel decking. Under the terms of this subcontract, Molnick's was required to finish the decking no more than six months after the framework was in place.
 
 
 5
 Mai entered into a sub-subcontract with Molnick's. This sub-subcontract obligated Molnick's to assume all responsibility for installing the hospital's framework. Molnick's was given five months to finish the task. Molnick's conditioned its performance on Mai's ability to supply it with steel and other materials according to a predetermined schedule.
 
 
 6
 Mai never lived up to its part of the sub-subcontract. Its steel shipments were routinely late and often included defective materials. As a result, Molnick's incurred sizeable cost overruns and failed to complete the framework on time. Mai's inability to deliver the materials as promised also prevented Molnick's from installing the steel decking on schedule.
 
 
 7
 Molnick's sued Mai in the district court for breach of the framework contract and for tortious interference with the decking contract.[2] In these actions, Molnick's sought to recover the unpaid balance of the framework contract,[3] plus additional labor and material costs it incurred in completing both the framework and decking contracts.
 
 
 8
 A jury found in favor of Molnick's on its breach of contract claim against Mai, and awarded Molnick's damages for the unpaid balance of the framework contract,[4] plus $1,154,008 in additional labor and material costs Molnick's incurred in completing that contract. The jury also found that Mai had tortiously interfered with Molnick's performance of the decking contract with Blake, and awarded Molnick's an additional $758,818 for the increased labor and material costs Molnick's was forced to expend in completing the decking contract. Mai failed to satisfy either judgment and has since filed a petition in bankruptcy.
 
 
 9
 At a post-trial hearing, the district court concluded that neither Aetna nor Commercial Union was liable for the increased labor and material costs Molnick's was awarded against Mai. Molnick's appeals this ruling.
 
 DISCUSSION
 A. Aetna's Liability to Molnick's
 
 10
 The Miller Act requires a general contractor on a federal construction project to furnish "[a] payment bond ... for the protection of all persons supplying labor and material in the prosecution of the work provided for in [the] contract." 40 U.S.C. § 270a(a)(2). The Act "represents a congressional effort to protect persons supplying labor and material for the construction of federal public buildings in lieu of the protection they might receive under state statutes with respect to the construction of nonfederal buildings." United States ex rel. Sherman v. Carter, 353 U.S. 210, 216, 77 S.Ct. 793, 797, 1 L.Ed.2d 776 (1957). Because the Act is "highly remedial in nature," it must be liberally construed to effectuate Congress's intent. Clifford F. MacEvoy Co. v. United States ex rel. Calvin Tomkins Co., 322 U.S. 102, 107, 64 S.Ct. 890, 893, 88 L.Ed. 1163 (1944).
 
 
 11
 Under the Act, "[e]very person who has furnished labor or material" used in a project may recover against a Miller Act surety. 40 U.S.C. § 270b(a). This includes any "subcontractor[ ] who deal[s] directly with the prime contractor," as well as any sub-subcontractor who has supplied labor or materials to a subcontractor. MacEvoy, 322 U.S. at 107-08, 64 S.Ct. at 893-94. Thus, Molnick's is entitled to recover against Aetna, the general contractor's surety, in its capacity as both a subcontractor and a sub-subcontractor, provided the costs it seeks to recover fall within the scope of the Miller Act.
 
 
 12
 In determining whether Molnick's may recover its increased costs under the Act, we must resolve two issues of first impression in this circuit: (1) can a subcontractor or supplier recover against a Miller Act surety for the subcontractor's increased labor and material costs caused by construction delays,[5] and if so, (2) is such recovery limited to situations in which the general contractor caused the delays?
 
 1. Expenses Attributable to Delay
 
 13
 The appellees argue, and the district court agreed, that the Miller Act does not require a general contractor's surety to reimburse a subcontractor for its additional labor and material costs caused by construction delays. This argument has been rejected by at least three other circuits. See United States ex rel. Lochridge-Priest, Inc. v. Con-Real Support Group, Inc., 950 F.2d 284 (5th Cir. Jan. 10, 1992); United States ex rel. T.M.S. Mechanical Contractors, Inc. v. Millers Mutual Fire Ins. Co. of Texas, 942 F.2d 946 (5th Cir.1991); United States ex rel. Pertun Constr. Co. v. Harvesters Group, Inc., 918 F.2d 915 (11th Cir.1990); United States ex rel. Heller Elec. Co. v. William F. Klingensmith, Inc., 670 F.2d 1227 (D.C.Cir.1982). In each case, the surety was held liable for the subcontractor's increased labor and material costs, but not for the subcontractor's lost profits caused by the delay. Con-Real, 950 F.2d at 287; Millers Mutual, 942 F.2d at 952; Pertun, 918 F.2d at 916; Klingensmith, 670 F.2d at 1232. We find these cases persuasive.
 
 
 14
 In Millers Mutual, a subcontractor incurred increased labor and material costs due to a series of unexpected change orders by the federal government. 942 F.2d at 948. The Fifth Circuit allowed the subcontractor to recover from the general contractor's Miller Act surety
 
 
 15
 for [the] additional or increased costs actually expended in furnishing the labor or materials in the prosecution of the work provided for in the contract and attributable to the delay. [footnote omitted].
 
 
 16
 Id. at 952 (emphasis in original). In reaching this conclusion, the court held that the subcontractor's ability to recover did not hinge either on the cause of the delay or the terms of the underlying contract. Id. at 951. Rather, it depended entirely on whether the claim fell within "the language of [the Miller Act], interpreted in light of its protective purpose." Id.; accord Pertun, 918 F.2d at 918. We agree with this reasoning, and look to the language of the Miller Act to determine Aetna's liability.
 
 
 17
 The Miller Act requires a general contractor to furnish a bond "for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person." 40 U.S.C. § 270a(a)(2) (emphasis added). Molnick's was hired to install the hospital's steel framework and decking.[6] The additional out-of-pocket costs it incurred directly contributed to the completion of these tasks. By definition, these expenses were incurred in the prosecution of the work provided for in the framework and decking contracts. See Klingensmith, 670 F.2d at 1232 (delay damages fall within the express terms of the Miller Act).
 
 
 18
 To conclude otherwise would not only ignore the language of the Act, but also its underlying purpose. As the Eleventh Circuit stated in Pertun,
 
 
 19
 Only by allowing a full recovery of [a subcontractor's] costs, including those portions caused by delay, can the purpose of the [Miller Act]--to afford the subcontractor the financial protection of an action against the surety--be achieved.
 
 
 20
 918 F.2d at 918. Accord Millers Mutual, 942 F.2d at 951 (similar).
 
 
 21
 We hold that increased out-of-pocket costs caused by construction delays fall within the intended coverage of the Miller Act. Thus, a subcontractor may recover these costs from a Miller Act surety. A subcontractor may not recover from the surety, however, any lost profits caused by the delay. "A claim for profits does not involve actual outlay and thus 'falls outside both the letter and the spirit of the [Miller] Act.' " Millers Mutual, 942 F.2d at 953 (quoting United States ex rel. Otis Elevator Co. v. Piracci Constr. Co., 405 F.Supp. 908, 910 (D.D.C.1975)). We therefore limit the amount Molnick's may recover from Aetna to Molnick's out-of-pocket labor and material costs incurred in completing the hospital's framework and decking contracts.[7]
 
 
 22
 2. Recovery When the General Contractor is Not at Fault
 
 
 23
 Having concluded that a subcontractor can recover from a general contractor's Miller Act surety for out-of-pocket expenses attributable to construction delays, we must next determine whether such recovery is limited to situations in which the delay was caused by the general contractor. We hold that it is not.
 
 
 24
 In United States ex rel. Superior Insulation Co., Inc. v. Robert E. McKee, Inc., 702 F.Supp. 1298 (N.D.Tex.1988), a district court held a Miller Act surety liable for delay costs in a situation nearly identical to Molnick's. In Superior Insulation, McKee (the general contractor) hired Kinney (the sub-contractor) to work on a government construction project. Kinney then hired Superior (the sub-subcontractor) to assist in this work. Due to Kinney's improper scheduling, Superior had to use additional labor and materials to complete its contract. Kinney filed a petition in bankruptcy, and Superior sued McKee and the Miller Act surety to recover its increased costs.
 
 
 25
 The district court concluded that Superior could recover its increased costs from McKee's Miller Act surety even though McKee had not been responsible for the construction delays. The court reasoned that:
 
 
 26
 if the sub-subcontractor were not allowed to recover against the general contractor and the surety, then ... he is left only with a cause of action against the subcontractor who is bankrupt. This is the type of situation that the Miller Act was attempting to avoid.
 
 
 27
 Id. at 1301.
 
 
 28
 We agree with the district court's analysis in Superior Insulation. The Miller Act does not limit a subcontractor's recovery to situations where the general contractor is at fault. Indeed, we have allowed a sub-subcontractor to recover against a Miller Act surety for labor and materials furnished to a subcontractor where the general contractor was blameless. See United States ex rel. Martin Steel Constructors, Inc. v. Avanti Constructors, Inc., 750 F.2d 759, 763 (9th Cir.1984), cert. denied sub nom, Harvis Constr., Inc. v. United States ex rel. Martin Constructors, Inc., 474 U.S. 817, 106 S.Ct. 60, 88 L.Ed.2d 49 (1985); United States ex rel. Hillsdale Rock Co., Inc. v. Cortelyou & Cole, Inc., 581 F.2d 239 (9th Cir.1978) (similar). Other courts have allowed subcontractors to recover under Miller Act payment bonds for delay costs caused by the federal government. See Millers Mutual, 942 F.2d at 951 (subcontractor allowed to recover when delay resulted from government change orders); United States ex rel. Mariana v. Piracci Constr. Co., 405 F.Supp. 904, 906 (D.D.C.1975) (subcontractor allowed to recover when delay was at least partially attributable to the federal government).
 
 
 29
 Allowing a subcontractor to recover delay costs even when the general contractor is not at fault is consistent with the overall remedial purpose of the Miller Act. The Miller Act was designed to protect subcontractors and suppliers who provide labor and materials to public projects. See, e.g., Sherman, 353 U.S. at 216, 77 S.Ct. at 796. Absent an indication from Congress to the contrary, there is no sound reason to require a finding of fault on the part of the general contractor as a prerequisite for recovery under the Miller Act.[8]
 
 
 30
 Aetna argues that our decision in American Casualty Co. of Reading, Pa. v. Arrow Road Constr. Co., 309 F.2d 923 (9th Cir.1962), requires a different result. We disagree. In Arrow, the subcontractor Arrow, sued Camco (the general contractor) and American Casualty (Camco's surety) to recover for work performed on a government construction project. The district court allowed Arrow to recover from American Casualty even though the court determined that Camco was not liable. The surety appealed, and we reversed.
 
 
 31
 Arrow does not stand for the proposition that a Miller Act surety cannot be held liable for costs incurred by a subcontractor or supplier when the general contractor was not at fault. Rather, it holds that when "[a] principal and a surety are jointly sued and the action fails as to the principal, the surety is for that reason discharged." Id. at 924. Here, Molnick's did not sue Blake and Aetna jointly to recover its increased costs. Instead, it sued Blake's subcontractor, Mai. Because Arrow did not address such a situation, it does not control this appeal.[9]
 
 
 32
 Aetna also argues that our decision in McDaniel v. Ashton-Mardian Co., 357 F.2d 511 (9th Cir.1966), bars Molnick's recovery. Again, we disagree. In McDaniel, a subcontractor sued the general contractor and its surety for delay damages. We rejected the subcontractor's claim because: (1) the subcontractor was notified before entering into the contract that frequent delays were likely, and (2) it was clear that the parties "did not intend their subcontract to mean that [the subcontractor] could recover damages from [the general contractor] for delays occasioned by proper change orders of the [government]." Id. at 516. Contrary to Aetna's argument, we did not hold that the subcontractor was barred from recovering against the general contractor's Miller Act surety simply because the delay was caused by someone other than the general contractor.[10]
 
 
 33
 We conclude that when a subcontractor's claim falls within the Miller Act, the subcontractor may recover from the general contractor's Miller Act surety all of its increased labor and material costs resulting from construction delays for which it is not responsible, even if those delays are caused by someone other than the general contractor.
 
 
 34
 B. Commercial Union's Liability to Molnick's
 
 
 35
 Because Mai did not contract directly with the federal government, it was not required to furnish a payment bond under the Miller Act. See 40 U.S.C. § 270a(a). Claims arising under its common law payment bond are therefore governed by state, rather than federal, law. United States ex rel. Palmer Constr., Inc. v. Cal. State Elec., Inc., 940 F.2d 1260, 1261 (9th Cir.1991). Under California law, common law surety bonds are construed in the same manner as other contracts. Rexroth & Rexroth, Inc. v. General Casualty Co. of America, 242 Cal.App.2d 363, 372, 51 Cal.Rptr. 505 (1966) ("[t]he general law of contracts governs a common-law bond").
 
 
 36
 We look to the terms of Commercial Union's payment bond with Mai to determine the extent of Commercial Union's liability. See id. at 370, 51 Cal.Rptr. 505.
 
 Commercial Union's payment bond provides:
 
 37
 Now, therefore the condition of this obligation is such that if the Contractor [Mai] shall promptly make payments to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the [framework] contract, then this obligation shall be void; otherwise it shall remain in full force and effect....
 
 
 38
 (emphasis added). Commercial Union expressly agreed to pay for "all labor and materials used ... in the performance of the contract." Thus, the increased labor and material costs Molnick's incurred in completing the hospital's framework, including costs attributable to construction delays, fell within the scope of Commercial Union's payment bond.
 
 
 39
 Commercial Union argues that Lambert v. Superior Court, 228 Cal.App.3d 383, 279 Cal.Rptr. 32 (1991), bars us from construing Mai's payment bond to cover Molnick's increased costs attributable to construction delays. We disagree. In Lambert, the Lamberts hired a general contractor to remodel their home. After the improvements were completed, they paid the contractor the full contract price. They refused to pay for any additional expenses the contractor incurred in finishing the project due to construction delays. The contractor brought suit for breach of contract and to foreclose his mechanic's lien. In response, the Lamberts petitioned the court to remove the lien, arguing that it did not encompass damages arising from construction delays. The court agreed and ordered the lien removed.
 
 
 40
 Lambert involved a mechanics lien under Cal.Civ.Code § 3123(a). This section permits a lien only for "the reasonable value of the labor, services, equipment, or materials furnished or for the price agreed upon by the claimant and the person with whom he or she contracted, whichever is less...." Because the Lamberts had already paid the full contract price, section 3123(a) precluded the contractor from maintaining his lien as leverage to recover additional labor and material costs.
 
 
 41
 Mai's common law payment bond is not subject to the same statutory restrictions as those governing mechanic's liens. Cf. John A. Artukovich Sons, Inc. v. American Fidelity Fire Ins. Co., 72 Cal.App.3d 940, 946, 140 Cal.Rptr. 434 (1977) (section 3123 limitations do not apply to statutory payment bonds). Lambert does not preclude Molnick's from recovering the increased costs it incurred in completing the hospital's framework, over and above the original contract price.
 
 C. Commercial Union's Liability to Aetna
 
 42
 We have held that Aetna is liable under the Miller Act for the increased costs Molnick's incurred in completing both the decking subcontract and the framework sub-subcontract. We now consider Aetna's crossclaim against Mai and Commercial Union for indemnification for these costs.[11]
 
 
 43
 Mai's performance bond required Commercial Union to indemnify Blake, and therefore Aetna, for any liability incurred due to Mai's failure to "promptly and faithfully perform" its contractual obligations. A subcontractor does not perform its contractual obligations for purposes of a performance bond until it pays for all the labor and materials used in completing its work. Glens Falls Indem. Co. v. United States ex rel. Westinghouse Elec. Supply Co., 229 F.2d 370, 375 (9th Cir.1955); Continental Casualty Co. v. Hartford Accident & Indem. Co., 243 Cal.App.2d 565, 569, 52 Cal.Rptr. 533 (1966) (a subcontractor's failure to pay a supplier "constitute[s] a breach of the subcontract").
 
 
 44
 Mai failed to "promptly and faithfully perform" its contract with Blake by not paying Molnick's for constructing the hospital's framework. As the surety for Mai's performance bond, Commercial Union is required to indemnify Aetna for any liability arising out of Mai's breach, including any amount Aetna is ordered to pay in satisfaction of Molnick's breach of contract judgment against Mai. See Pacific States Elec. Co. v. United States Fidelity & Guar. Co., 109 Cal.App. 691, 694, 293 P. 812 (1930) ("A bond which undertakes to guarantee the faithful performance of a subcontract to furnish necessary labor and materials for a specified portion of the structure, implies a promise to pay for such labor and materials so furnished.").
 
 
 45
 Aetna is also entitled to indemnification for any amount it is required to pay for Molnick's increased costs in completing the decking contract. When Mai contracted with Blake, it agreed not to commit any act "which will interfere with the performance of work by another contractor or subcontractor." By frustrating Molnick's timely completion of the decking contract, Mai breached its contract with Blake. As a result, Commercial Union must also indemnify Aetna for any liability it incurs as a result of Mai's tortious interference with Molnick's completion of the decking contract.[12]
 
 CONCLUSION
 
 46
 We hold that both Aetna and Commercial Union are jointly liable for Molnick's increased labor and material costs incurred in completing the framework sub-subcontract, while Aetna alone is liable for Molnick's increased costs incurred in completing the decking subcontract. Under the terms of Mai's performance bond, however, Commercial Union is required to indemnify Aetna for any amount it pays in satisfaction of Molnick's Miller Act claims.
 
 
 47
 We reverse the district court's judgment and remand to the district court to enter judgments in favor of Molnick's and against Aetna and Commercial Union consistent with this opinion. To the extent the judgments include any recovery for lost profits, they shall be reduced to exclude such recovery.
 
 
 48
 REVERSED and REMANDED for further proceedings.
 
 
 
 [1]
 40 U.S.C. § 270a(a) provides:
 Before any contract, exceeding $25,000 in amount, for the construction ... of any public building ... of the United States is awarded to any person, such person shall furnish to the United States the following bonds, which shall become binding upon the award of the contract to such person ...:
 (2) A payment bond with a surety or sureties satisfactory to such officer for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person.
 
 
 [2]
 Molnick's also sued Blake for breach of contract, and was eventually awarded over $450,000 in damages on this claim. This judgment has been fully satisfied and is not at issue in this appeal
 
 
 [3]
 Because Molnick's was unable to complete the framework contract on time, Mai suspended all further payments under the contract
 
 
 [4]
 Neither Aetna nor Commercial Union contests their liability for the unpaid balance of Molnick's contract with Mai
 
 
 [5]
 Aetna contends our decisions in Continental Casualty Co. v. Schaefer, 173 F.2d 5 (9th Cir.), cert. denied, 337 U.S. 940, 69 S.Ct. 1517, 93 L.Ed. 1745 (1949), and Seaboard Surety Co. v. United States ex rel. C.D.G., Inc., 355 F.2d 139 (9th Cir.1966), control this issue. We disagree. In both Schaefer and Seaboard, we held that a Miller Act surety was required to reimburse a subcontractor for extra work which was impliedly authorized by the general contractor. Because the district court in this case did not find an implied agreement by Blake or Aetna to pay for Molnick's additional labor and materials, these cases are inapposite
 
 
 [6]
 Molnick's agreement with Blake provided that:
 The Subcontractor agrees to furnish all labor, materials, scaffolding, tools, equipment, services and other requisites required to complete in place, and to the extent that the Contractor is obligated to do so, the WELDED STUD CONNECTORS AND STEEL FLOOR AND ROOF DECKS (including without limitation thereto, the provisions of SECTIONS 05065 and 05321 of the Specifications), in and for the MAIN HOSPITAL COMPLEX--Contract No. N62474-C-8799 CENTER REPLACEMENT P-600 at NAVAL REGIONAL MEDICAL CENTER, SAN DIEGO, CALIFORNIA....
 Molnick's contract with Mai required it to:
 furnish all labor, materials, scaffolding, tools, equipment, services and other requisites required to complete in place, and to the extent that the Contractor is obligated to do so, the STRUCTURAL STEEL (including without limitation thereto, the provisions of SECTION 05120 of the Specifications) in and for the MAIN HOSPITAL COMPLEX--Contract No. N62472-81-C-8799 CENTER REPLACEMENT P-600 at NAVAL REGIONAL MEDICAL CENTER, SAN DIEGO, CALIFORNIA....
 
 
 [7]
 In its briefs on appeal, Molnick's contends both judgments reflect only the increased labor and material costs it incurred in completing the framework and decking contracts. At oral argument, however, it was represented that the judgments include $343,667.65 of lost profits attributable to construction delays. The parties agree the judgments should not include an award for lost profits. We cannot determine from the record whether one or both judgments include such an award, or if they do, the amount of such award. Accordingly, we leave this question for the district court to resolve on remand
 
 
 [8]
 In concluding that Molnick's may recover its increased costs in this case, we do not hold that such costs are recoverable regardless of the reason for of the delay. There may be instances when recovery would be inappropriate, such as when the delay is attributable to the subcontractor's own conduct. Millers Mutual, 942 F.2d at 952 n. 14
 
 
 [9]
 Arrow did have a contractual relationship with R & W, another subcontractor, to assume all of R & W's responsibilities on the project. While it is possible that this contract would have placed Arrow in the role of a sub-subcontractor entitled to recover against Camco's surety, it does not appear the parties ever raised, nor did we consider, this argument
 
 
 [10]
 Aetna points to several district court cases which arguably support its position. See United States ex rel. E & R Constr. Co. v. Guy H. Jones Constr. Co., 390 F.Supp. 1193 (M.D.Tenn.1972), aff'd, 489 F.2d 756 (6th Cir.1974); United States ex rel. Pittsburgh-Des Moines Steel Co. v. MacDonald Constr. Co., 281 F.Supp. 1010 (E.D.Mo.1968); United States ex rel. Watsabaugh & Co. v. Seaboard Surety Co., 26 F.Supp. 681 (D.Mont.1938), aff'd on other grounds, 106 F.2d 355 (9th Cir.1939). Although these cases hold that a subcontractor is not entitled to recover from a surety for costs incurred due to delays "growing out of the acts or omissions of others," see, e.g., Watsabaugh, 26 F.Supp. at 688, they provide no explanation for this assertion. Thus, they furnish little guidance in determining whether Molnick's may recover its increased costs from Aetna
 
 
 [11]
 The district court did not reach this issue because it ruled, contrary to our holding in this case, that Aetna was not liable for any of Molnick's increased costs
 
 
 [12]
 Commercial Union argues that it should not be required to reimburse Aetna for costs associated with the decking contract because it was not liable for such costs under Mai's payment bond. This argument overlooks Commercial Union's obligations under Mai's performance bond. Commercial Union's duty to indemnify Aetna under Mai's performance bond is separate from liability arising under Mai's payment bond