**UNITED STATES, For the Use and Benefit of D & P CORPORATION, Plaintiff,**

v.

**TRANSAMERICA INSURANCE Co., and D.A.T. Constructors, Inc., Defendants.**

No. 92–1248–JTR.

United States District Court,
D. Kansas.

Feb. 28, 1995.

Roger Sherwood, Sherwood & Harper, Wichita, KS, for plaintiff.

Stan R. Singleton, Derby, KS, for defendants.

## ORDER

REID, United States Magistrate Judge.

This case was tried to the court pursuant to 28 U.S.C. § 636(c). Following the bench trial, the parties have submitted their proposed findings of fact and conclusions of law. Pursuant to Fed.R.Civ.P. 52(a), the court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. D.A.T. Constructors, Inc. (DAT) was awarded contract No. F 14614 91 C 0013 at McConnell Air Force Base on July 2, 1991 (Def.Exh. Y). The contract indicated that the work would begin within 21 days and must be completed within 180 days. However, the 180 days was changed to 210 days in a handwritten change made to the contract on December 11, 1991 (Def.Exh. Y).

2. Under the contract, DAT was required to remove some underground tanks, replace some underground tanks, and provide and install cathodic protection, automatic tank gauges, and overfill/overspill protection on the tanks (R. at 12).

3. DAT entered into an agreement with D & P Corporation, in which DAT subcontracted some of the work to D & P. The agreement specified what work would be performed by D & P. The agreement indicated that D & P would perform the specified work for $250,000.00. This written agreement is in the form of a letter prepared and signed by Paul Peffly, Vice President of D & P. Douglas Miller of DAT signed the agreement on July 5, 1991, accepting the terms of the agreement as set forth in the letter. The written agreement is silent on when the terms of the subcontract were to be completed (P.Exh. 1; R. at 37).

4. Prior to any excavation occurring at McConnell, digging permits had to be issued (R. at 15–16, 96–97). Digging permits were issued between July 30, 1991, when the first permit was issued, and October 25, 1991 when the last 6 permits were issued. Approximately one half of the permits were not issued until the latter part of October (Pl. Exh. 29 at 9; R. at 99–106).

5. D & P was delayed in its performance under the agreement because of the delays in the issuance of digging permits by the Air Force and because of delays due to incorrect drawings of the underground tanks provided to DAT and D & P by the Air Force (Pl.Exh. 2, 3, 6, 7, 8, 9, 10, 11, 12, 13, 15, and 29; R. at 20, 63). Defendant acknowledges that the subcontractor was delayed from performing under the subcontract for these reasons (Doc. 67 at 2). Plaintiff relied on the incorrect drawings when it made its bid on the subcontract (R. at 13–14).

6. There was no evidence presented that any delays by the plaintiff in the performance of their subcontract was due to any action or inaction on the part of the defendant. In fact, DAT specifically complained to the Air Force because of the delays in obtaining the digging permits, and repeatedly informed the Air Force that this would result in additional costs (Def.Exh. P, Q, R, S, T).

7. The delays in the performance of D & P under the subcontract because of the delays in the issuance of digging permits and the incorrect drawings of the underground tanks

had not been anticipated when D & P entered into its subcontract with DAT.

8. Because of the delays occasioned on this project, DAT made a claim to the government for an additional $254,002.73. This did not include anything for the claim of D & P. (R. at 27; Pl.Exh. 21).

9. DAT made a request for an equitable contract adjustment on behalf of D & P in the amount of $192,371.68 (Pl.Exh. 29; R. at 431). As a result of this request, the Air Force indicated that it would offer an adjustment of $27,278.61 (Def.Exh. X).

10. The evidence is inconclusive as to whether the plaintiff and defendant had agreed that the subcontract would be finished by a date prior to the completion date of the main contract.

11. The contract and subcontract were substantially completed by February 5, 1992 (R. at 560–61; Pl.Exh. 18).

12. Because of the unanticipated delays set forth above, D & P incurred the following additional costs under the subcontract:

| | |
|---|---|
| Equipment costs | $ 40,889.00 |
| Supervision costs | $ 12,000.00 |
| Labor costs | $ 44,669.00 |
| Material costs | $ 626.00 |
| Profit | $ 5,729.50 |
| TOTAL | $103,913.50 |

(Pl.Exh. 22, 23). The above total adopts the equipment, labor, and material costs set out in Pl.Exh. 23. The supervision cost set out above does not include either the overhead (which is eliminated) or the profit (which is instead combined with the profit for labor and material). The profit line is modified to reflect 10% of the supervision and labor and material, minus the overhead. A profit of 10%, which plaintiff seeks, is even less than the 15% that Mr. Roelfs testified is the custom in the industry on projects in which additional time or work is required of the contractor (R. at 331). The 10% figure is the profit margin sought by plaintiff when he bid on the subcontract (R. at 134, 153; Pl.Exh. 16).

13. Defendant Transamerica Premier Ins. Co. issued the Miller Act payment bond for DAT on the project (Pretrial Conference Order, stipulation at 2).

## CONCLUSIONS OF LAW

■ The Miller Act requires a general contractor on a federal construction project to furnish a payment bond for the protection of all persons supplying labor and material in the prosecution of the work provided for in the contract. 40 U.S.C. § 270(a)(2). The Miller Act represents a congressional effort to protect persons supplying labor and material in federal public building or public work projects in lieu of the protection they might receive under state statutes with respect to non-federal projects. *See Mai Steel Service Inc. v. Blake Construction Co.*, 981 F.2d 414, 416–17 (9th Cir.1992).

■ Under the Miller Act, every person who has furnished labor or material used in a project may recover against a Miller Act surety. This includes any subcontractor who deals directly with the prime contractor. *Id.* at 417.

The issues in this case are: (1) whether plaintiff can recover in quantum meruit from the general contractor, and (2) whether the plaintiff is entitled to recover on the payment bond because of the unanticipated delays which resulted in additional costs to the plaintiff.

■ A subcontractor may recover in quantum meruit from the prime contractor and surety in at least two instances. First, where there is a substantial breach of the subcontract, the subcontractor may forego any suit on the contract and sue for the reasonable value of his performance. Second, the subcontractor may recover in quantum meruit where it has performed work outside the terms of the contract that benefits the prime contractor. *United States for Use of C.J.C., Inc. v. Western States Mechanical Contractors, Inc.*, 834 F.2d 1533, 1550 (10th Cir.1987). The court has found that the delays in this case were not the fault of DAT, but were clearly the fault of the Air Force. DAT did not breach its contract with D & P.

■ A contractor who bids for work has the right to rely on the plans and specifications submitted to him for bidding purposes.

Burdens other than those contemplated by the contract may not be placed upon the contractor without additional compensation. *Hensel Phelps Construction Co. v. United States for Use of Reynolds Electrical and Engineering Co., Inc.*, 413 F.2d 701, 704 (10th Cir.1969); *Wunderlich Contracting Co. v. United States for Use of Reischel & Cottreli*, 240 F.2d 201, 205 (10th Cir.), *cert. denied*, 353 U.S. 950, 77 S.Ct. 861, 1 L.Ed.2d 859 (1957). Plaintiff had to perform work which was clearly not contemplated when the subcontract was made because of the incorrect drawings of the tanks. It was work outside the terms of the subcontract between DAT and D & P, and it certainly was additional work that benefitted DAT. DAT itself submitted a claim to the government for an additional $254,002.73 because of the delays on the project.

■ This court holds that increased out-of-pocket costs caused by delays which were unanticipated at the time the subcontract was made, and which were caused by the government, can be recovered from a Miller Act surety. *See Mai Steel Service, Inc.*, 981 F.2d at 417–19; *United States for Use of T.M.S. Mechanical Contractors, Inc. v. Millers Mutual Fire Ins. Co. of Texas*, 942 F.2d 946, 951 (5th Cir.1991); *United States for Use of Pertun Construction Co. v. Harvesters Group, Inc.*, 918 F.2d 915, 918 (11th Cir.1990); *United States for Use of Mariana v. Piracci Construction Co., Inc.*, 405 F.Supp. 904, 906 (D.D.C.1975). Plaintiff is entitled to recover under the bond the out-of-pocket labor and material costs attributable to the delays. *MAI*, 981 F.2d at 418; *Millers Mutual*, 942 F.2d at 951–952; *Harvesters Group*, 918 F.2d at 918. While other circuits have recently held otherwise insofar as recovery for profit, the rule in this circuit is that a use plaintiff is entitled to recover for overhead and profit. *Hensel Phelps Construction Co.*, 413 F.2d at 704; *Wynne v. United States for Use of Mid–States Waterproofing Co., Inc.*, 382 F.2d 699, 701 (10th Cir.1967); *Wunderlich Contracting Co.*, 240 F.2d at 205; *but see Mai*, 981 F.2d at 418; *Millers Mutual*, 942 F.2d at 953; *Harvesters Group*, 918 F.2d at 919.

■ Other circuits have also held that a plaintiff cannot recover under the Miller Act the use value of the subcontractor's own equipment. *Millers Mutual*, 942 F.2d at 952; *Harvesters Group*, 918 F.2d at 919; *United States for Use of Skip Kirchdorfer, Inc. v. Aegis/Zublin Joint Venture*, 869 F.Supp. 387, 394–95 (E.D.Va.1994). The rationale for not allowing recovery against the surety for the use value of owned equipment is that use value of owned equipment is analogous to lost profits. *Millers Mutual*, 942 F.2d at 952; *Harvesters Group*, 918 F.2d at 919. However, since the 10th Circuit has permitted recovery under the Miller Act for profit, the court will allow plaintiff to recover for the use value of equipment owned by the plaintiff. The cost for renting equipment for the project in question is clearly recoverable. *United States for Use of Eddies Sales & Leasing, Inc. v. Federal Insurance Co.*, 634 F.2d 1050, 1052 (10th Cir.1980).

■ A subcontractor can only recover from the surety for additional or increased costs actually expended in furnishing the labor or material in the prosecution of the work provided for in the contract and attributable to the delay. *Millers Mutual*, 942 F.2d at 952. A party can recover lost profits if the lost profits can be established with reasonable certainty. Absolute certainty is not required to prove lost profits. What is required is that the court or jury be guided by some rational standard. The evidence necessary to establish lost profits with reasonable certainty depends in large measure upon the circumstances of the particular case. However, the claimant must furnish the best available proof as to the amount of loss that the particular situation warrants. *Petroleum Energy, Inc. v. Mid–America Petroleum, Inc.*, 775 F.Supp. 1420, 1426 (D.Kan. 1991).

■ With these standards in mind, the court finds that plaintiff is entitled to recover the additional equipment costs, labor costs, and materials costs attributable to the delays. The additional equipment, labor and material costs incurred by the plaintiff, D & P, because of the delay, is $98,184.00. Plaintiff is also entitled to profits of $5,729.50.

 The court finds that plaintiff is not entitled to an award of additional overhead. The subcontractor must be able to demonstrate with reasonable certainty and specificity the increased overhead incurred because of the delay. *Millers Mutual*, 942 F.2d at 952 n. 15. Plaintiff has made a claim for increased overhead of $11,324.00. This amount was obtained by taking 25% of the added cost of labor and material (Pl.Exh. 23). The court finds that a figure arrived at in such an arbitrary manner does not demonstrate the required certainty and specificity, especially since Mr. Roelfs, the expert who came up with the overhead figure, stated that overhead could run between 15% to 30% (R. at 331–332). Mr. Roelfs provided no basis for his determination that the proper overhead in this case should be 25% of the added cost of labor and material (R. at 389–390). In fact, Mr. Roelfs specifically stated that he was not offering an opinion as to whether plaintiff's actual overhead expense was 25%; he was merely stating that the 25% figure falls within the normal standard range (R. at 400–401). The mere fact that plaintiff estimated overhead of 25% when it bid on the subcontract is insufficient to demonstrate actual overhead in the absence of any figures setting out the actual overhead expense of plaintiff on the project.[1]

 The last issue before the court is D & P's request for attorney's fees pursuant to K.S.A. 40–256. However, the question of attorneys' fees in a Miller Act action is a matter of federal law, not state law. The Act does not provide attorneys' fees for the prevailing party. Absent a provision in the contract or payment bond awarding attorneys' fees, a Miller Act plaintiff may only recover under one of the federally recognized exceptions to the general principle that each party should bear the costs of its own legal representation. Specifically, attorneys' fees may be awarded to a successful party when his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Western States Mechanical Contractors*, 834 F.2d at 1542–43. Plaintiff has not demonstrated,

and the court does not find that any of the above prerequisites for an award of attorneys' fees under the Miller Act have been established in this case. Therefore, attorneys' fees will not be awarded in this case.

IT IS THEREFORE ORDERED that plaintiff shall be awarded judgment in the amount of $103,913.50.

Copies of this order shall be mailed to counsel of record for the parties.

---

1. For the same reason, the court will not award, under supervision costs, the $3,000.00 amount included for overhead (Pl.Exh. 23).