**UNITED STATES for Use of EDWARD E. MORGAN CO., Inc., v. MARYLAND CASUALTY CO.**

No. 10999.

Circuit Court of Appeals, Fifth Circuit.

Feb. 12, 1945.

Wm. Harold Cox, of Jackson, Miss., for appellant.

Wm. H. Watkins, of Jackson, Miss., for appellee.

Before McCORD, WALLER, and LEE, Circuit Judges.

McCORD, Circuit Judge.

Edward E. Morgan Company, Inc., has appealed from a summary judgment rendered dismissing its complaint. This company was a subcontractor on work done by the United States in constructing a levee known as Wallace Lake Dam across Cypress Bayou in Caddo and DeSoto Parishes, Louisiana. Maryland Casualty Company was the commercial surety on the bond of the principal contractor, Newsom Bros. & J. W. Snowden. United States, for Use of Edward E. Morgan Co., Inc. v. Maryland Casualty Co., D. C., 54 F.Supp. 290.

Recovery is sought on the surety bond for the sum of $17,378.25, which is the ceiling use value of rental on equipment of the subcontractor and which was fixed by the Office of Price Administration, for the period of 31 days this equipment remained idle at the work site.

The prime contract for this levee work was let by the United States to Newsom Bros. & J. W. Snowden. Thereupon, this contractor filed its statutory bond with the Maryland Casualty Company as its surety, embodying the conditions required by 40 U.S.C.A. § 270a, commonly known as the Miller Act. The bond is conditioned that: "If the principal shall promptly make payment to all persons supplying labor and material in the prosecution of the work provided for in said contract, and any and all duly authorized modifications of said contract that may hereafter be made, * * * that such bond shall be void."

The prime contractor sublet a part of this work to the Morgan Company and entered into an agreement July 12, 1941, which among other things, provided: "The terms and conditions of the principal contract will govern the requirements and the responsibilities of the parties to this subcontract, in all things except insofar as hereby modified or changed."

The subcontract further provided: "The subcontractor agrees to commence work as directed by the contractor and to proceed in such a manner as not to delay or interfere with the contractor's work or with the work of any other subcontractor."

The standard specifications employed by the United States War Department on all public works were made a part of the contract here under consideration: "It is understood that any instructions or decisions given by a superior officer, through the contracting officer, are to be considered instructions or decisions of the contracting officer in all cases where, under the terms of the contract, decision rests with the contracting officer."

The subcontract consisted of two sections of levee work. The smaller section being north of Cypress Bayou, where the work commenced and where the equipment was located. The larger section of work lay south of this bayou. Numerous pieces of expensive and heavy equipment were required for the performance of the work outlined. When the subcontractor had finished approximately 90 per cent of the work on the north side of Cypress Bayou, it was ordered by the contracting officer in charge of the work to cease operations and not to move its equipment onto or to commence that part of the work south of the bayou. This order left a larger part of the subcontractor's equipment, and all of the larger and heavier pieces, idle. The subcontractor advised the United States, the prime contractors, and the Maryland Casualty Company, who executed the bond in question, of such circumstances, and requested that the order be recalled or that it be allowed to move its equipment from this job or that rent would accrue by reason of such increased cost occasioned by said unanticipated order. The stoppage of the work was in no wise the fault of the subcontractor, but was occasioned by the Kansas City Railroad Company, who complained that further work on the south side of the bayou would endanger abutments to its trestles which were located about three miles upstream. The subcontractor was not permitted to remove its equipment from the job for a period of about 31 days, and it fixed the use value of this equipment for this time at the amount of $17,378.25.

The contract between the United States and the prime contractor was later terminated with the subcontractor's consent, which concluded the necessity for the final completion of the work originally contemplated.

The appellant first sought recovery for work and labor done under certain specifications, and for rental of equipment. Later, appellant filed an amended bill omitting claim for work and labor done and demanded only the sum claimed for rent or use value of its plant and equipment. Upon answer and amended answer of Bond Company the issue finally, and according to appellant, was simplified to: "Whether or not a surety on a bond given under 40 U.S.C.A. § 270a is liable for the use value of or rent on equipment furnished in the prosecution of public work, while such equipment is kept idle on the job by the Government engineer in charge of the work, but for no reason contemplated by the contract. Stated differently, is or not the use value of or rent on equipment, under the circumstances stated, 'material' within the meaning of and covered by such statute and bond?"

■ We are unable to find any material factual difference between the parties, as

the affidavits offered leave the facts practically without dispute. The question was one of law as to whether or not, under the undisputed facts, the delay complained of constituted labor and material within the meaning of the Act of Congress and bond sued upon. Summary judgments are looked upon with favor, and they will be upheld unless there is some genuine issue of fact presented. Chapman v. United States, 8 Cir., 139 F.2d 327; Engl v. Aetna Insurance Co., 2 Cir., 139 F.2d 469; Beegle v. Thomson, 7 Cir., 138 F.2d 875; Nahtel Corporation v. West Virginia Pulp & Paper Co., 2 Cir., 141 F.2d 1.

While the question here is not without its difficulties, the great weight of authority leads to the conclusion that while such a bond with its enabling enactment, which we have here under consideration, must be liberally construed, we are not warranted in writing liability into the contract and the statute. Nothing was owing for work, labor or equipment, and nothing was owing for material in the prosecution of the work; no modifications of the contract had been made or were contemplated. All that transpired was that, without fault of the subcontractor, the Government engineer ordered the work stopped and declined to permit the removal of equipment. This was a breach of the contract, and it may be that appellant is entitled to recover for this breach as against the prime contractor or the Government, or both, but it becomes patent that we are not warranted in fastening upon the Casualty Company liability on its bond for this breach. Friestedt Co. v. U. S. Fireproofing Co., 10 Cir., 125 F.2d 1010; United States for the Use of Spencer v. Massachusetts Bonding Co., 6 Cir., 18 F.2d 203; Clifford F. MacEvoy Co. v. United States for the Use and Benefit of the Calvin Tomkins Co., 322 U.S. 102, 64 S.Ct. 866; American Surety Co. v. Wheeling Structural Steel Co., 4 Cir., 114 F.2d 237; Babcock & Wilcox v. American Surety Co., 8 Cir., 236 F. 340; United States, to Use of Watsabaugh & Co., et al. v. Seaboard Surety Co., 26 F.Supp. 681; United States v. Hercules Co., D. C., 52 F.2d 454.

The appellant has cited many cases which we have carefully considered. In every instance, however, where recovery was allowed on the bond, the outlay for which recovery was sought was necessary for the performance of the contract and was within the contemplation of the parties to the contract. It is without dispute that the injury alleged to have been suffered here by the appellant was not contemplated by the parties, but was totally unexpected and unforeseen.

We are of opinion and so hold that Maryland Casualty Company should be and is absolved from liability on its bond.

We find no reversible error in the record and the judgment is affirmed.