UNITED STATES, for Use and Benefit of PERTUN CONSTRUCTION COMPANY, Plaintiff–Appellee,

v.

HARVESTERS GROUP, INC., Defendant,

National Union Fire Insurance Company of Pittsburgh, Pa., Defendant–Appellant.

Nos. 89–5601, 89–6041.

United States Court of Appeals, Eleventh Circuit.

Dec. 7, 1990.

J. Steven Hudson, Kimbrell & Hamann, P.A., Miami, Fla., for defendant-appellant.

**916**

Jon C. Moyle, Jr., Steel Hector & Davis, Miami, Fla., for plaintiff-appellee.

Before ANDERSON and EDMONDSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

EDMONDSON, Circuit Judge:

This Miller Act case presents two basic questions on appeal. The first is a matter of first impression in this circuit: When a prime contractor causes delay in the progress of a federal government project, can the subcontractor recover from the prime contractor's Miller Act surety for the increases, resulting from the delay, in its actual expenditures for labor and material actually supplied to the project? And the second is an issue of contract interpretation and application: Assuming recovery from the surety for the costs of delay is generally available under the Miller Act, will the subcontractor's recovery nonetheless be barred if the subcontract agreement provides that the subcontractor's sole remedy for delay will be an extension of time to perform, but the prime contractor has in fact wrongfully prevented the subcontractor from completing performance? We hold that the Miller Act allows recovery from the surety for increased out-of-pocket costs caused by delay and that the subcontract provision regarding no damages for delay does not preclude recovery under these circumstances. We therefore affirm the bulk of the district court's award below.[1] Because we find the district court's determination of additional costs incurred due to pre-commencement delay clearly erroneous, however, we reduce the damage award by $1,200, from $69,376.71 to $68,176.71.[2]

Harvesters Group, Inc. (hereinafter Harvesters) entered into a prime contract with the Navy to construct improvements at the United States Navy and Marine Corps Reserve Training Center in Miami, Florida. In accordance with the Miller Act, 40 U.S.C.A. §§ 270a–270d, Harvesters secured a payment bond in the amount of $1,517,600 from Appellant National Union Fire Insurance Co. of Pittsburgh, Pa. (hereinafter National Union). Harvesters then entered into a subcontract with Appellee Pertun

---

**1.** Appellant-surety National Union raises several additional arguments: (1) it challenges the amount of the award granted appellee-subcontractor Pertun for work in place at the time Pertun's participation in the project was terminated; (2) it contends that a single Miller Act award should not combine contractual or value-based damages with cost-based damages; and (3) it suggests that, to the extent the district court's final judgment in Pertun's favor is reversed on appeal, the award of attorney's fees to Pertun should also be reversed because such fees would not constitute "sums justly due" under the Miller Act. See 40 U.S.C.A. § 270b(a).

National Union's first argument, challenging the amount of the award for work in place, actually goes to several factual determinations made by the district court. These determinations involve the validity and extent of certain setoffs claimed by the surety for payments it made to Pertun's unpaid suppliers, as well as the incorporation into the project of tools and materials left on the site by Pertun. Because these findings of fact are not clearly erroneous, this challenge must fail. See Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); Fed.R.Civ.P. 52(a). National Union's argument regarding the mixing of value and cost-based damages in a single Miller Act award was raised for the first time on appeal, and we decline to consider it. See United States f/u/b/o Micro–King Co. v. Community Science Tech., 574 F.2d 1292 (5th Cir.1978) (reviewing court does not consider issue raised for first time on appeal, except where pure question of law is involved and refusal to consider it would result in miscarriage of justice). The success of National Union's third argument depends on the success of the rest of its appeal. Because we uphold almost all of the district court's award, we also affirm its grant of attorney's fees below. See United States f/u/b/o Sherman v. Carter, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957).

**2.** The entirety of the $4,800 awarded below for pre-commencement delay damages represents increased costs incurred for supervisory personnel: 16 weeks (the period of pre-commencement delay as determined by the district court) times $300 (the difference between the weekly salary Pertun was contractually obligated to pay the supervisor hired for this project and the value of his work as a laborer on another project). The supervisor whose salary constituted the increased cost was not hired until four weeks into the period of pre-commencement delay, however; thus, the $1,200 awarded for this four week period when his salary was not paid was clearly erroneous.

Construction Co. (hereinafter Pertun), a concrete forming subcontractor, under which Pertun was to perform concrete work necessary for the federal project. Paragraph 3(f) of the subcontract provided that if the prime contractor delayed the subcontractor's work, the subcontractor would be granted an extension of time to perform, but that such extension of time would preclude other claims by the subcontractor on account of the delay.

The Navy training center project had lots of problems. Toxic wastes were discovered, the job site lacked running water and electricity, and Harvesters experienced difficulties in finding subcontractors to perform parts of the work, in obtaining necessary permits, and in obtaining timely submittals of documents required by the Navy. As a result of these difficulties, construction was delayed from the outset. After construction commenced, Harvesters' failure to supervise, schedule, and coordinate the work of the various subcontractors properly caused further delays—delays which increased the labor and equipment rental costs of Pertun. Then, when Pertun's concrete work was eighty percent finished, its participation in the project was wrongfully terminated by Harvesters. Pertun was not permitted to return to the job site, either to complete performance or to retrieve its tools and materials.

As Harvesters' surety pursuant to the Miller Act payment bond, Appellant National Union has admitted liability to Appellee Pertun for "work in place"—work Pertun performed, but had not yet been paid for. The parties stipulated this amount to be $34,593: the difference between $226,605, the value of the labor and materials provided by Pertun to the project, and $192,012, the amount Pertun had already been paid. In the meantime, however, some of Pertun's unpaid suppliers had themselves filed claims against the bond; National Union thus sought setoffs—for payments made to Pertun's unpaid suppliers, as well as for payments withheld by the Navy due to defects in Pertun's work—against the $34,593 admittedly owed Pertun for work in place. Pertun contested the validity and extent of the claimed set-

offs and also asserted the right to an additional award to cover the increased costs it incurred as a result of delay.

After a bench trial, the district court rejected the majority of National Union's claimed setoffs and granted Pertun's request for additional damages to cover costs incurred due to delay. The resulting final judgment was for $69,376.71: $25,329.60 for work in place; $900.00 for Pertun's equipment and materials which Harvesters retained and incorporated into the project; and $43,147.11 for increased costs of labor and equipment rentals caused by the delay. The district court also granted Pertun's motion for reasonable attorney's fees and costs. As noted above, this opinion will focus on the portion of damages awarded for increased costs caused by delay.

### 1. *Damages for delay under the Miller Act.*

The purpose of a Miller Act payment bond is to protect subcontractors and suppliers who provide labor and material for a federal project, because federally owned lands or buildings are exempt from the liens that would normally secure these parties' rights under state law. *United States f/u/b/o Sherman v. Carter*, 353 U.S. 210, 216, 77 S.Ct. 793, 797, 1 L.Ed.2d 776 (1957); *see* 40 U.S.C.A. §§ 270a–270b. To effectuate this congressional intent, the Miller Act is to be liberally construed and applied. *F.D. Rich Co., Inc. v. United States f/u/b/o Industrial Lumber Co., Inc.*, 417 U.S. 116, 124, 94 S.Ct. 2157, 2162, 40 L.Ed.2d 703 (1974). But a liberal construction does not mean that the Miller Act establishes an unlimited basis for recovery; courts have held that the Miller Act surety is not liable for damages caused by the prime contractor's breach of contract. *See, e.g., United States f/u/b/o Edward E. Morgan Co., Inc. v. Maryland Casualty Co.*, 147 F.2d 423 (5th Cir.1945); *L.P. Friedstedt Co. v. U.S. Fireproofing Co.*, 125 F.2d 1010 (10th Cir.1942) (applying Heard Act, predecessor of Miller Act). Thus, for example, in the present case National Union would not be liable to Pertun for profits lost as the result of Harvester's

premature and wrongful termination of the subcontract. *See Arthur N. Olive Co. v. United States f/u/b/o Marino,* 297 F.2d 70 (1st Cir.1961). It would be liable, on the other hand, for any "sum or sums justly due" Pertun for labor or material furnished in the performance of its agreement to work on the public project. *See* 40 U.S. C.A. § 270b(a) (1986).

■ In the court below, Pertun sought and received "damages for delay." Despite the possibly misleading use of the term "damages," this award represented compensation for Pertun's increased out-of-pocket costs caused by the delay for labor and materials Pertun actually furnished in performing its contractual obligation. The essential question presented thus becomes: are these increased costs "sums justly due" for labor and materials provided or are they really damages for the prime contractor's breach? Because we conclude that these increased costs of performance are "sums justly due" rather than damages for breach, we affirm the district court judgment holding National Union as the Miller Act surety liable for these additional out-of-pocket expenses.

Although the liability of a Miller Act surety for increased costs caused by delay has not yet been directly addressed by this court,[3] several courts have granted such awards. *See United States f/u/b/o Heller Elec. Co. v. William Klingensmith, Inc.,* 670 F.2d 1227 (D.C.Cir.1982); *United States f/u/b/o Otis Elevator Co. v. Piracci,* 405 F.Supp. 908 (D.D.C.1975); *United States f/u/b/o Mariana v. Piracci Const. Co., Inc.,* 405 F.Supp. 904 (D.D.C.1975). Others (including a district court for the Southern District of Florida construing a Florida statute analogous to the Miller Act) have gone the other way, disallowing damages for delay as beyond the scope of the bond. *See, e.g., Friestedt,* 125 F.2d at 1011–12; *W.S.A. Inc. v. Stratton,* 680

F.Supp. 375 (S.D.Fla.1988); *Lite–Air Products, Inc. v. F & D of Maryland,* 437 F.Supp. 801 (E.D.Pa.1977) (also construing state statute analogous to Miller Act). We find the logic of the former cases—and particularly the reasoning set forth in *Mariana*—more persuasive. *See Mariana,* 405 F.Supp. at 906–07.

Surety liability for out-of-pocket costs of delay is consistent with both the language and the purpose of the Miller Act. The statute provides for recovery of the costs of labor and materials furnished or used by the subcontractor in performing contractual obligations. Only by allowing a full recovery of these costs, including those portions caused by delay, can the purpose of the statute—to afford the subcontractor the financial protection of an action against the surety—be achieved. If the surety is not liable for the portion of costs caused by delay, the subcontractor will either have to bear the burden himself or rely on his remedy for breach of contract against the prime contractor. And it was Congress's view of the inadequacy of these very alternatives to assure full payment for labor and materials actually supplied to a federal project that prompted the enactment of the Miller Act. *See id.*

National Union calls our attention to *United States f/u/b/o Edward E. Morgan Co., Inc. v. Maryland Casualty Co.,* 147 F.2d 423 (5th Cir.1945), a former Fifth Circuit decision denying a subcontractor's claim against a government contractor's bond for the rental or use value of the subcontractor's equipment left idling at the job site during an unexpected thirty-one day delay. Appellant cites this case for the proposition that a subcontractor cannot recover on the bond for costs of delays unforeseeable at the time of contracting and then points out that the district court in the present case, in the context of holding the "no damages for delay" clause of the sub-

---

**3.** In an unreported district court opinion, *United States f/u/b/o Gray–Bar Elec. Co. v. J.H. Copeland & Sons Constr., Inc.,* Case No. 75–253–Civ–FAY (S.D.Fla.1976), the district court awarded damages, including costs of delay, in an action brought by a subcontractor against both the prime contractor and his Miller Act surety. The

former Fifth Circuit affirmed this award without specifically discussing the issue of a surety's liability for delay damages under the Miller Act. *See United States f/u/b/o Gray-bar Elec. Co. v. J.H. Copeland & Sons Constr., Inc.,* 568 F.2d 1159 (5th Cir.1978).

contract unenforceable (see footnote 4 *infra*), explicitly found the specific delays suffered by Harvesters and Pertun unforeseeable. Thus, National Union argues, the additional costs caused by these unforeseeable delays cannot be recovered from the Miller Act surety under *Morgan.*

National Union's reliance on *Morgan* is misplaced. As an initial matter, we are unconvinced that a finding of fact that specific causes and types of delay were unforeseeable necessitates the conclusion that delay of a general nature was not contemplated or foreseen. Even if we assume that parties to a modern-day construction contract could fail to contemplate delay, however, *Morgan* would not control. The subcontractor in *Morgan* sought to recover for the rental or use value of equipment it actually owned, rather than the out-of-pocket increased cost of equipment rentals and labor sought and recovered by Pertun. The use value of its own equipment sought by the *Morgan* subcontractor is far more analogous to lost profits—for which recovery against the surety is not allowed—than to actual expenditures for labor or materials utilized in the performance of the subcontract—for which it is.

Thus, based on both the language and the underlying policies of the Miller Act, we hold that a Miller Act surety's liability for any "sum or sums justly due" for labor or materials furnished in the performance of its agreement to work on the public project includes liability for all out-of-pocket expenditures for that labor or material, including additional or increased expenditures caused by delay.

2. *Effect of contractual provision limiting the subcontractor's remedy for delay.*

Paragraph 3(f) of the subcontract between Harvesters and Pertun provides:

> Should SUBCONTRACTOR be delayed in the prosecution of the work by the act, neglect or default of CONTRACTOR, owner or architect, or by any damage caused by fire, lightning, earthquake, cyclone, or any casualty for which SUBCONTRACTOR is not responsible, then the time fixed for the completion of the work pursuant to the terms of the agreement shall be extended for a period equivalent to the time lost by reason of the cause aforesaid.... SUBCONTRACTOR agrees that such extension of time for completing the work precludes, satisfies and cancels any and all other claims on account of such delay.

Based on this provision, National Union contends that even if (as we have held above) there is a general rule permitting surety liability for increased costs of delay, Pertun should nonetheless be unable to recover such costs under the circumstances of this case. By signing a subcontract containing the above-quoted clause, National Union argues, Pertun assumed the risks of delay and effectively waived its right to pursue a remedy for delay beyond an extension of time to perform.

Although this action was brought under the Miller Act, the effect and validity of the contractual clause purportedly limiting the subcontractor's remedy for delay is governed by the law of Florida, the state in which the agreement was executed and was to be performed. *United States f/u/b/o Seminole Sheet Metal v. SCI, Inc.,* 828 F.2d 671, 675 (11th Cir.1987). And under Florida law, "no damages for delay" clauses are generally valid and enforceable. *Id.*

Thus, the "no damages for delay" clause—if that is what this clause really is—is not unenforceable in Florida as a matter of public policy. A close reading of the quoted provision reveals, however, that it does not simply state that the subcontractor shall receive "no damages for delay"; instead, the subcontractor's agreement to assume the risks of delay and to waive its damages remedy is specifically conditioned upon the contractor's extension of time for completion of the subcontractor's work. Yet the district court found that Harvesters either did not grant an extension of time to make up for the delay or granted it in such a manner as to render it meaningless. The lower court found that Harvesters wrongfully and prematurely terminated Pertun's participation in the

project, preventing Pertun from completing performance. National Union does not challenge these factual findings on appeal; instead, Appellant's arguments on this issue focus on the general validity of "no damages for delay" provisions under Florida law and the absence of circumstances which would render one of the recognized exceptions to enforceability applicable.[4] Because Pertun's contractual waiver of its damages remedy was limited by a condition precedent—the extension of time to complete performance—which was neither fulfilled nor excused, we hold that it cannot operate to preclude Pertun's recovery.[5]

*Summary*

For these reasons, we affirm the district court's award below, but reduce the amount of damages by $1,200, from $69,-376.71 to $68,176.71, to correct the district court's clear error in calculating additional costs incurred by Pertun due to pre-commencement delay. We also grant Pertun's motion for attorney's fees on appeal. *See United States f/u/b/o Sherman v. Carter,* 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957).

AFFIRMED in part, and REVERSED in part.

---

**4.** The district court concluded, as we do, that Pertun's waiver of a damages remedy was unenforceable due to Harvester's failure to grant an extension of time to perform. It then went on, however, to set forth alternative grounds for unenforceability: the unforeseeability of the delays involved and the "active interference" of the contractor. Because we base our decision on the failure of the condition precedent, we do not address the possible application of these exceptions to enforceability.

**5.** Appellant also calls our attention to paragraph 3(g) of the subcontract, which states that the contractor shall not be liable to the subcontrac-

tor for delays resulting from any cause beyond the contractor's control. The district court found, however, that the delays were caused by Harvester's failure to supervise, schedule, and coordinate the work, and this finding is not clearly erroneous. Whether or not such conduct on the part of the contractor would constitute "active interference" so as to render the "no damages for delay" clause unenforceable under Florida law (a question we do not decide), it is sufficient to take the case outside the category of delays resulting from causes beyond the contractor's control. The provision is therefore not applicable.