**UNITED STATES of America FOR the Use and Benefit of SKIP KIRCHDORFER, INC. and Joseph C. Kirchdorfer, Plaintiffs,**

v.

**AEGIS/ZUBLIN JOINT VENTURE, Zublin Delaware, Inc., Ed. Zublin AG, and Federal Insurance Company, Defendants.**

No. 2:89cv11.

United States District Court,
E.D. Virginia,
Norfolk Division.

Aug. 1, 1994.

 

Henry H. McVey, III, McGuire, Woods, Battle & Boothe, Richmond, VA, for Aegis/Zublin Joint Venture, Zublin Delaware, Inc. and Ed. Zublin AG.

Robert G. Watt, Barbara G. Werther, Eric M. Drattell, Watt, Tieder, Killiam & Hoffar, McLean, VA, for USF & G.

## MEMORANDUM OPINION AND ORDER

MacKENZIE, Senior District Judge.

This matter is before the Court on a variety of motions presented by both plaintiff and defendants. These motions were argued before the Court on Monday, July 18, 1994. For the reasons set forth below, the Court lifts the stay and enters judgment in accordance with the arbitration award of March 18, 1994.

### I. FACTS AND PROCEDURAL HISTORY

On July 3, 1985, Skip Kirchdorfer, Inc. ("SKI") agreed to a subcontract from the American Export Group, Inc. ("AEGIS") to provide all labor, tools, and equipment to construct 125 military family housing units at Guantanamo Bay, Cuba, in the event that AEGIS received the government contract for the job. Several months later, on November 25, 1985, AEGIS and Ed. Zublin AG, a German corporation, formed a joint venture to execute the Navy contract. In accordance with the joint venture agreement, AEGIS and Zublin executed as co-principals a Miller Act payment bond issued by Federal Insurance Company ("Federal") in the amount of $2.5 million.[1] On January 31, 1986, AEGIS and Zublin executed an amendment to their joint venture agreement, reflecting Zublin's intention to transfer its interests in the joint venture to its wholly-owned subsidiary, ZDI. On June 14, 1986, SKI executed a subcontract agreement for $4 million with the AEGIS/Zublin Joint Venture.

The subcontract agreement provided that any claims arising out of the agreement would be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration

Laurence J. Zielke, Charles F. Merz, Michael Lowe, Pedley, Ross, Zielke, Gordinier, Louisville, KY, G. William Birkhead, Deborah Mancoll (Local Counsel), William E. Franczek, Vandeventer, Black, Meredith & Martin, Norfolk, VA, for plaintiffs.

Kenneth H. Lambert, Jr., Williams, Kelly & Greer, Norfolk, VA, Ernest M. Stern, Graham & James, Washington, DC, for Aegis/Zublin, Zublin Delaware, and Ed. Zublin, AG and Federal Ins. Co.

Andrew D. Ness, Morgan, Lewis & Bockius, Washington, DC, for Ed. Zublin AG and Federal Ins. Co.

---

1. On December 2, 1985, Zublin established a Delaware subsidiary called Zublin Delaware, Inc. ("ZDI"). While there is disagreement over whether ZDI or Zublin was the other principal on the surety bond, this issue is irrelevant to the Court's decision.

Association. The agreement further provided that the arbitrator's award would be final and judgment entered in accordance with the applicable law in any court having jurisdiction. Finally, the agreement provided that the prevailing party in any arbitration would be entitled to recover reasonable attorneys' fees, costs, charges and expenses incurred.

Delays during the construction caused plaintiffs to file this action under the Miller Act, 40 U.S.C. § 270a, *et seq.*, in January, 1989, against the AEGIS/Zublin Joint Venture, ZDI, Zublin, and Federal (collectively, "the defendants") for breach of contract, quantum meruit, trade defamation and libel. On September 14, 1989, the Court stayed the case pending the outcome of the arbitration. This arbitration, conducted in New York before three experienced arbitrators, extended over 5 years and consisted of over 120 separate hearings. On March 22, 1994, the arbitrators issued their final decision awarding SKI $2,631,555.00 on its claims[2], $709,550.00 in attorney's fees, and $1,939.82 in administrative fees and expenses. SKI was also awarded 9% interest on the balance of the awards (not including the administrative fees) not paid within thirty (30) days of March 22, 1994.

SKI now requests the Court to lift the stay and confirm the arbitration award. In addition, it also requests that the Court pierce the corporate veil of ZDI and hold its parent company, Zublin, liable for the full amount of the arbitration award. The joint venture, on the other hand, has moved the Court to vacate the arbitration award. Finally, Federal, the surety on the bond, argues that even if the arbitration award is confirmed, it cannot be held liable for the full sum of the bond because the arbitrators' award may encompass costs that are not covered by a Miller Act payment bond.

## II. DISCUSSION OF AUTHORITY

A. *Jurisdiction of this Court to Enter Judgment.*

■ As a preliminary matter, the defendants argue that this Court does not have

jurisdiction to confirm the arbitration award. Section 9 of the Federal Arbitration Act provides that:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then ... any party to the arbitration may apply to the court so specified for an order confirming the award ... If no court is specified in the agreement of the parties, then such application *may* be made to the United States court in and for the district within which such award was made.

9 U.S.C. § 9 (1988) (emphasis added). In this case, no court was specified in the subcontract to confirm the award. The arbitration, however, was conducted in New York.

The circuits are split as to whether the default provision of section 9 is permissive or mandatory—i.e. whether, in absence of an agreement, confirmation *must* be brought in the district where the award was made or merely *can* be brought there. *See, e.g., In re VMS Securities Litigation,* 21 F.3d 139, at 145 (7th Cir.1994) (Section 9 is permissive); *Smiga v. Dean Witter Reynolds, Inc.,* 766 F.2d 698, 706 (2d Cir.1985), *cert. denied,* 475 U.S. 1067, 106 S.Ct. 1381, 89 L.Ed.2d 607 (1986) (permissive); *Sunshine Beauty Supplies, Inc. v. United States Dist. Court for the Central Dist. of Cal.,* 872 F.2d 310, 312 (9th Cir.1989) (mandatory). While the Fourth Circuit has not ruled on this issue, at least one district court in this circuit has found the venue provision to be merely permissive. *See Amalgamated Clothing and Textile Workers Union v. Fed'n of Union Representatives,* 664 F.Supp. 995, 996 (S.D.W.Va.1987) ("This Court joins other courts in holding that the language of the Federal Arbitration Act is permissive rather than exclusive."). Recently, the Seventh Circuit conducted an extensive analysis of section 9 of the Arbitration Act and, after reviewing the case law of other circuits, the wording of the statute and the policy behind the provision, concluded that it is a permissive venue statute. *VMS,* 21 F.3d, at 145.

---

**2.** The defamation and libel claims were not arbitrated and have now been abandoned by the plaintiffs.

The Court agrees with that analysis. Moreover, after successfully petitioning this court in this same Miller Act case in 1989 to set aside an early default judgment against the Miller Act surety, Federal (it had failed to answer), counsel for all the defendants asked for the stay of these proceedings pending outcome of the ongoing arbitration. Counsel volunteered that with Federal properly on board all parties herein would be bound by the arbitrators' decision. Because this Court has subject-matter jurisdiction over the case, it has authority to confirm the arbitration award made in New York.

**B.** *Defendants' Motion to Vacate the Arbitration Award.*

The defendants, however, have moved the Court to vacate the arbitration award. The mechanics for such action are set up in Section 10 of the Federal Arbitration Act which provides that a court can vacate an arbitration award only where: (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption in the arbitrators; (3) the arbitrators were guilty of misconduct in refusing to postpone the hearing, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award was not made. 9 U.S.C. § 10 (1988).

■ Courts are in unanimous agreement that an arbitrators' award is entitled to a special degree of deference. *Upshur Coals Corp. v. United Mine Workers of America, Dist. 31,* 933 F.2d 225 (4th Cir.1991). In fact, the Court's jurisdiction under the Federal Arbitration Act is strictly limited to avoid frustrating the purpose of arbitration—avoiding litigation. *Jardine Matheson & Co., Inc. v. Saita Shipping, Ltd.,* 712 F.Supp. 423, 426 (S.D.N.Y.1989) Thus, where the challenge to an award does not go to the arbitrators' fundamental power but instead, as in this case, involves the merit of an award as made, "the standard of justification is much more stringent ... [and] they must be considered presumptively unjustified." *United Food*

*and Commercial Workers, Local 400 v. Marval Poultry Co.* 876 F.2d 346, 351 (4th Cir. 1989). As this Circuit has found, an "award is enforceable 'even if the award resulted from a misinterpretation of law, faulty legal reasoning or erroneous legal conclusion' and may only be reversed 'when arbitrators understand and correctly state the law, but proceed to disregard the same.'" *Upshur,* 933 F.2d at 229 (citations omitted).

■ The defendants argue that the arbitration award in this case should be vacated because: (1) the liability award was irrational; (2) the damage award was irrational and exceeded the powers of the arbitrators; (3) the damage award was made in manifest disregard for the law; and (4) the attorneys fees award was made without allowing further live witnesses and argument pertinent to that award.

Defendants argue that it was irrational for the arbitrators to rule in plaintiffs favor based on the testimony of the witnesses when only one plaintiff's witness appeared and was opposed by 10 defendants' witnesses. Clearly, this is not a proper basis for vacating an arbitration award. Three neutral qualified arbitrators heard the evidence and observed all the witnesses in the case over a five year period. They had more than ample opportunity to assess the credibility of the witnesses and the evidence presented and it is moot testimony to the strength of plaintiff's case that they found the one witness more convincing. This Court will not overturn their collective judgment simply because the defendants disagree with the result.

Furthermore, the Court is quite skeptical of the defendants' contention that "irrationality" of the award could justify the vacation of an arbitration award under § 10. *See Matheson,* 712 F.Supp. at 426 (court's role is restricted to ascertaining whether one of the specific grounds for vacating award exists). *Cf. Ainsworth v. Skurnick,* 960 F.2d 939, 941 (11th Cir.1992) (holding that arbitrary and capricious awards are not required to be enforced.) While the Court acknowledges that it should not review the issues of fact resolved by the arbitrators, *see Int'l Union of Elec., Radio and Mach. Workers v. In-*

*gram Mfg. Co.,* 715 F.2d 886, 890 (5th Cir. 1983), *cert. denied,* 466 U.S. 928, 104 S.Ct. 1711, 80 L.Ed.2d 184 (1983), a cursory review indicates that the arbitrators' decision was supported by evidence and was neither arbitrary nor capricious.

■ Defendants further contend that the damages awarded were irrational and contrary to law since they were greater than even the most liberal construction damages formula would allow. Defendants have quoted excerpts of testimony from the arbitration hearings and submitted various financial documents in an effort to convince the Court that the award was too high. Once again, this is just an abortive attempt to have this Court relitigate the case—a task that defeats the entire purpose of arbitration. That the arbitrators did not issue an opinion with its award or a breakdown of its calculation of damages is irrelevant. Arbitrators are not required to explain the basis of their decisions. *See, e.g., Raytheon Co. v. Automated Business Systems, Inc.,* 882 F.2d 6, 8 (1st Cir.1989); *Atlanta–Tomberlin, Inc. v. Eastern Band of Cherokee Indians,* 672 F.Supp. 887, 889 (W.D.N.C.1987); *Clemons v. Dean Witter Reynolds, Inc.,* 708 F.Supp. 62, 63 (S.D.N.Y.1989) (arbitrators may make lump sum awards and courts will not ordinarily inquire into the basis of the award). Nor is it the duty of the Court to look beyond a lump sum award to try an analyze the thought processes of the arbitrators. *Concourse Beauty School, Inc. v. Polakov,* 685 F.Supp. 1311, 1320 (S.D.N.Y.1988). In this case, the arbitrators made a lump sum damage award that was less than half of what plaintiffs had asked for in their complaint and, absent one of the circumstances found in § 10 of the Federal Arbitration Act, this decision will stand.

■ The defendants also attempt to rest their motion to vacate on the ground that the arbitrators "exceeded their powers." *See Dighello v. Busconi,* 673 F.Supp. 85, 87 (D.Conn.1987) (citations omitted), *aff'd,* 849 F.2d 1467 (2d Cir.1988) ("If an arbitration panel rules on issues not presented to it by parties, it has exceeded its authority and award must be vacated"). A conclusion reached by an arbitration panel, even if questionable, however, does not constitute exceeding its powers. Because the arbitrators in this case ruled on only those issues presented them, the use of this statutory justification for vacating the award is misplaced. Defendants are merely claiming that the arbitrators reached an incorrect and illogical decision. *Cf. Benjamin F. Shaw Co. v. Cincinnati Gas & Electric,* 633 F.Supp. 841, 843 (S.D. Ohio 1986) ("the Court must guard against use of [the defense that the arbitrators exceeded their powers] as a ruse to induce it to review the merits of the arbitrators' decision."). Thus, this objection is not a proper base for vacating the award and is without merit.

Finally, the defendants claim that the arbitrators attorneys' fees award effectively constituted a refusal to hear evidence pertinent to a matter in controversy.[3] Since the subcontract provided for an award of attorneys' fees to the prevailing party, the arbitrators had both parties submit a notarized, itemized invoice in support of its claim.[4] The arbitrators then based their award of attorneys fees on these invoices. Apparently no strong objection to this procedure was raised by the defendants before the arbitrators. Defendants argue that because they did not get a chance to cross-examine witnesses and obtain discovery concerning these fees, this constituted a refusal by the arbitrators to hear pertinent evidence. The Court disagrees.

■ First of all, the Court is skeptical that "evidence pertinent and material to the controversy" as stated in § 10 of the arbitration act includes evidence related to the attorneys' fees issue. In this case, the matter in controversy was the liability and damages of the parties. Attorneys' fees were to be awarded to the prevailing party but this was a collateral issue of the arbitration. Thus,

---

**3.** At the oral argument of these motions held on July 18, 1994, counsel for the joint venture characterized this action by the arbitrators as a denial of due process guaranteed by the Constitution.

**4.** SKI's counsel submitted a 59–page itemized report detailing all the expenses incurred during the arbitration. The Joint Venture's counsel, on the other hand, merely presented a lump sum amount.

such evidence was not "pertinent and material" to the controversy which involved the liability and damages of SKI and the joint venture.

■ Even if this provision of § 10 is applicable, however, the actions of the arbitrators do not justify the Court overturning the arbitration award. The arbitrators' decision is due special deference, and this Court presumes that its attorneys' fees award was reasonable. This presumption is supported by the arbitrators' actions. For instance, they did not award SKI the entire attorneys' fees it requested in its affidavit, indicating that they independently considered the amount and its reasonableness. The Court notes the irony that defendants would complain about the attorneys' fee award of $709,-550 when they themselves submitted an invoice claiming nearly $1,700,000 in legal fees. Furthermore, if the defendants had an objection to the procedures used by the arbitrators, such procedural issues should have been resolved at the arbitration. The Court will not vacate the arbitration award on this dubious ground.

In conclusion, the review of an arbitration award is very restrictive, and the Court is authorized to vacate such an award only under the limited circumstances found in § 10 of the Arbitration Act. The justifications presented by the defendants are mere objections to the conclusions reached by the arbitrators and are not sufficient to vacate the award. The panel of three arbitrators heard all of the evidence in more than 120 hearings over a 5–year period and reached a collective decision in favor of SKI. The Court finds no valid basis to overrule that decision.

C. *Plaintiff's Motion to Pierce the Corporate Veil.*

The arbitration award ordered the Aegis–Zublin Joint Venture to pay plaintiff $3,343,-044.82 in damages, attorneys' fees and administrative expenses. In addition to requesting confirmation of this award, the plaintiff has asked the Court to pierce the corporate veil and hold Zublin liable for the debts of ZDI, the partner in the joint venture.[5] Zublin, itself, was not officially a partner in the joint venture, having assigned its rights in the joint venture to ZDI on January 31, 1986.

■ A corporation, however, is a distinct legal entity separate from its shareholders. *Cheatle v. Rudd's Swimming Pool Supply Co.*, 234 Va. 207, 360 S.E.2d 828, 831 (1987). Thus, a decision to pierce the corporate veil and impose liability on its shareholders is "an extraordinary exception" that should be permitted only when necessary to promote justice. *Id.* (quoting *Beale v. Kappa Alpha Order*, 192 Va. 382, 397, 64 S.E.2d 789, 797 (1951)).

■ Under Virginia law, one who seeks to have a court disregard the corporate form must show not only that the corporation was the "*alter ego*, alias, stooge, or dummy" of the shareholder but that it was also a "device or sham used to disguise wrongs, obscure fraud, or conceal crime." *Cheatle*, 234 Va. at 212, 360 S.E.2d at 831; *Perpetual Real Estate Services, Inc. v. Michaelson Properties, Inc.*, 974 F.2d 545, 548 (4th Cir. 1992). Furthermore, the burden is on the party asserting such a claim. *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 683 (4th Cir.1976); *Perpetual*, 974 F.2d at 548.

■ The factors considered significant to this inquiry are the initial capitalization of the corporation, the non-payment of dividends by the corporation, the siphoning of funds by the shareholder, the failure to observe corporate formalities, the non-functioning of officers and directors, the absence of corporate records and the fact that the corporation is merely a facade for the dominant shareholder. *DeWitt*, 540 F.2d at 685–87. No single rule or criterion, however, is dispositive, and each case requires examination of the particular factual circumstances involved. *Id.* at 687; *O'Hazza v. Executive Credit Corp.*, 246 Va. 111, 431 S.E.2d 318, 320–321 (1993).

---

**5.** Plaintiff seeks this remedy because, it claims, AEGIS is bankrupt, and ZDI is more than $2 million in debt and insolvent.

SKI argues that the following facts support its contention that the corporate entity should be disregarded in this case: (1) Zublin owns 100% of ZDI; (2) ZDI was grossly undercapitalized; (3) ZDI has never been financially independent of Zublin; (4) ZDI has never paid dividends; (5) ZDI has always been insolvent; (6) Zublin siphoned corporate funds from ZDI; (7) ZDI's officers and directors were all officers and directors of. Zublin and were essentially nonfunctional; (8) ZDI was a facade for the operations of Zublin; and (9) Zublin created ZDI to defraud SKI.

Certainly, these allegations can possibly make a case for piercing the corporate veil. However, the evidence presented by SKI falls well short of meeting its burden under Virginia law. For example, while plaintiff contends that $50,000 initial capital was inadequate for ZDI, it does not present any evidence as to what an appropriate level of capitalization would have been. *See O'Hazza*, 431 S.E.2d at 321 (lower court's determination that $10,000 initial capital was insufficient was questionable considering no evidence was presented as to the appropriate level of capitalization for such a business). SKI has also failed to present adequate proof of the fraudulent intent of Zublin, which is a requirement under Virginia law. *See Perpetual*, 974 F.2d at 548. It is clear from SKI's own exhibits that Zublin transferred its interest in the joint venture over 4 months prior to SKI entering the subcontract agreement with the joint venture. Therefore, SKI should have known that the joint venture it was dealing with consisted of AEGIS and ZDI, rather than the parent Zublin. While the allegations may support the plaintiffs' position, SKI has failed to meet its burden of proof on this issue. For this reason, the Court DENIES plaintiffs' motion to pierce the corporate veil of ZDI.[6]

**D.** *Costs Covered by the Surety Bond.*

Finally, Federal argues that the arbitration award is not covered by its Miller Act payment bond. The bond in this case was

issued by Federal in the amount of $2.5 million. It was subsequently increased by $57,603.50. While the liability of the surety under a Miller Act payment bond extends only to costs for labor and material provided to the project, 40 U.S.C. § 270a (1988), the arbitration award was merely a lump sum. Federal argues that since SKI was seeking damages for, among other things, profit and equipment, the Court cannot enter judgment against them since such costs, if part of the arbitration award, are not covered by the bond.

It is true that the Miller Act does not establish an unlimited means of recovery against a surety. For instance, a Miller Act surety is not liable for damages caused by the prime contractor's breach of contract. *United States ex rel. Pertun Construction Co. v. Harvesters Group, Inc.*, 918 F.2d 915, 917 (11th Cir.1990). Likewise, lost profits are not recoverable from the surety in an action on the Miller Act payment bond. *Id.; United States ex rel. Moran Towing Corp. v. Hartford Acc. & Indem. Co.*, 204 F.Supp. 353 (D.R.I.1962).

Furthermore, with respect to the "materials" covered by the bond, the *cost of* capital equipment is not considered "labor or material" under § 270a. *United States ex rel. Sunbelt Pipe Corp. v. United States Fidelity and Guaranty Co.*, 785 F.2d 468, 470 (4th Cir.1986). The Fourth Circuit defined "material" under the Act as:

> . . . [T]hings which will be incorporated in the project itself, such as steel beams [and] brick, . . . It has a broader reach, however, for it includes expendable and other things reasonably expected to be consumed, or substantially consumed, in the performance of the work. A thing which may reasonably be expected to be removed by the contractor and used in subsequent jobs is a part of the contractor's capital equipment, but something which is reasonably expected to have no utility or economic value to the contractor after the comple-

6. Because the Court denies SKI's motion to pierce the corporate veil, the defendants' motion to strike certain exhibits is moot.

tion of the work may be classified as material.

*Id.* While the cost of equipment is not covered, *rent* for equipment used in the performance of the work is generally considered to be recoverable from the surety. *See Continental Casualty Co. v. Clarence L. Boyd Co.,* 140 F.2d 115, 116 (10th Cir.1944). Furthermore, parts and equipment which are necessary to, and wholly consumed by, the performance of the work are recoverable, as well as are small repairs that do not substantially add to the value of the equipment. *Id.; see also United States ex rel. Chemetron Corp. v. George A. Fuller Co.,* 250 F.Supp. 649 (D.Mont.1965) (expense of maintaining, as distinguished from replacing equipment, covered under payment bond).

■ The "damages" suffered by SKI in this case came from delays at the worksite which turned a 14–month job into a 3–year one. Having brought men and equipment into Cuba, the delays in construction, for whatever reason, increased the costs of labor and equipment rental and maintenance for SKI. These out-of-pocket costs of delay are recoverable from the surety. *See Pertun,* 918 F.2d at 918; *United States ex rel. T.M.S. Mechanical Contractors, Inc. v. Millers Mut. Fire Ins. Co. v. The Craftsmen, Inc.,* 942 F.2d 946, 952 (5th Cir.1991) (out-of-pocket costs from delay actually expended in furnishing labor or material in the prosecution of the work provided for in the contract is recoverable against the surety.). Liability for these increased costs caused by delay is consistent with the language and purpose of the Miller Act, which is to be construed liberally. *Pertun,* 918 F.2d at 917–18. In this case, the additional expenses that were caused by the delays in construction at Guantanamo Bay would be covered by the Miller Act payment bond and recoverable from the surety to the extent of the bond.

■ Finally, the surety contends that the arbitrators *may* have included lost profits in their arbitration award. In this case, three qualified arbitrators made a searching inquiry into all facets of this controversy, including the bond, the construction activity, and the binding contracts. For over five years and in more than 120 hearings led by competent attorneys, what was covered and what was not was constantly being argued. This Court will not render a 5–year arbitration null and void because the arbitrators made a lump sum award. As the Court has already noted, such an award is entirely appropriate and consistent with the function of arbitration in our judicial system. *see Clemons,* 708 F.Supp. at 63. An illustrative case is *United States ex rel. Yonker Constr. Co. v. W. Contracting Corp.,* 935 F.2d 936 (8th Cir. 1991). There, the plaintiff/subcontractor incurred additional costs because of delays at the job site. The plaintiff filed suit in federal court on the Miller Act bond. After a jury returned a lump sum verdict in favor of the plaintiff, the defendant argued that the jury instructions permitted the jury to award items not recoverable under the Miller Act. *Id.* at 940. The district court, however, refused to grant a new trial and the Eighth Circuit affirmed this decision. The Court reasoned, in part, that the verdict did not establish that the jury included in its damages "any material amounts that were not recoverable under the Miller Act." In the case at bar, SKI produced evidence that it incurred over $3 million in excess direct labor costs, which are recoverable from the surety under the bond. The mere possibility that the $2.6 million arbitration award contained other amounts that are not recoverable under the Miller Act, without any evidence of such, is insufficient to allow the surety to escape its obligations under the bond. The arbitrators knew that the case was based on the Miller Act, the payment bond and over 900 exhibits filed in the case, and this Court assumes that the arbitrators based their award on proper grounds.[7] For these reasons, the Court holds that the arbitration award is fully recoverable against the surety, Federal, up to the amount of the

---

7. The arbitrators may well have calculated the award based on the *quantum meruit* theory set forth in SKI's original complaint. The Fourth Circuit has held that *quantum meruit* recovery is available against the Miller Act surety. *United States ex rel. Coastal Steel Erectors, Inc. v. Algernon Blair, Inc.,* 479 F.2d 638, 641 (4th Cir.1973).

payment bond.[8]

## III. CONCLUSION

In their subcontract agreement, SKI and the AEGIS/Zublin Joint Venture voluntarily agreed to arbitrate any disputes arising from the contract. The parties further agreed that any decision of the arbitrators would be final and judgment entered by any court having jurisdiction. Following five years of arbitration, the three neutral arbitrators, after assessing the credibility of the witnesses and reviewing the voluminous documentary evidence produced, reached a collective decision in favor of SKI. Finding no valid reason for vacating this decision, the arbitration award is hereby CONFIRMED as to the AEGIS/Zublin Joint Venture and as to the surety, Federal, up to the penal sum of the payment bond. The Court, however, refuses to pierce the corporate veil of ZDI, finding that the evidence presented by the plaintiff falls well short of that necessary under Virginia law.

It is so ORDERED.

---

**8.** While the arbitration award alone exceeds the penal sum of the bond, the Court notes that the attorneys' fees would also be recoverable from the surety under the bond. *See United States ex rel. Sherman v. Carter,* 353 U.S. 210, 220–21, 77 S.Ct. 793, 798–99, 1 L.Ed.2d 776 (1956); *United States ex rel. Southeastern Municipal Supply Co. v. Nat'l Union Fire Ins. Co. of Pittsburg,* 876 F.2d 92, 93 (11th Cir.1989) (where there is a contractual provision for the recovery of attorneys' fees, such provision is enforceable under the Miller Act against the contractor *and* its surety).