[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 21, 2011
JOHN LEY
CLERK

No. 10-15519

_____

D.C. Docket No. 1:07-cv-02445-JOF


UNITED STATES OF AMERICA FOR THE USE
AND BENEFIT OF CAPITAL COMPUTER GROUP, LLC,

                                        Plaintiff - Appellee,

                        versus

THE GRAY INSURANCE COMPANY,

                                        Defendant - Appellant.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(December 21, 2011)

Before TJOFLAT and CARNES, Circuit Judges, and MICKLE,[*] District Judge.

MICKLE, District Judge:

Capital Computer Group, LLC ("Capital Computer") entered into a subcontract to install a fiber optic network for a fire alarm system at the Centers for Disease Control in Atlanta, Georgia. When the prime contractor failed to pay, Capital Computer sued the Miller Act surety, The Gray Insurance Company ("Gray'), for payment under the bond. Gray refused payment on grounds that the subcontract was a sham and Capital Computer was merely a financier for the project. The district court granted summary judgment in favor of Capital Computer. Upon review, we affirm.

## I.    Miller Act

The Miller Act requires contractors to post bond to ensure payment of persons supplying labor or materials on any government construction contract exceeding $100,000.00. 40 U.S.C. § 3131(b)(2). Because federally owned property is exempt from liens that normally protect laborers and suppliers from non-payment, the Miller Act was enacted to provide a substitute remedy. United States v. Munsey Trust Co., 332 U.S. 234, 241 (1947); United States ex rel. Pertun

_____

[*] Honorable Stephan P. Mickle, United States District Judge for the Northern District of Florida, sitting by designation.

2

Constr. Co. v. Harvesters Grp, Inc., 918 F.2d 915, 917 (11th Cir. 1990). The Miller Act is to be liberally construed to carry out its remedial purpose. Peturn, 918 F.2d at 917.

The Miller Act by its terms covers "every person that has furnished labor or material" for the project. 40 U.S.C. § 3133(b)(1). The right of action to sue on the bond, however, extends only to the subcontracting and sub-subcontracting level. J.W. Bateson, Co. v. United States ex rel. Bd. of Trustees, 434 U.S. 586, 591, 98 S.Ct. 873, 876 (1978). There is no right of action for those further down the contracting chain. Id.

Although the term "subcontractor" is not defined within the Miller Act, the term is construed in accordance with "usage in the building trades" to mean "one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract." Id. 434 U.S. at 590, 98 S.Ct. at 875-76. In general, a subcontractor's lien covers all work that the subcontractor provides in the performance of the subcontract, including work that the subcontractor hires out to other entities. 56 C.J.S. Mechanics' Liens § 88.

## II.    Capital Computer's Subcontract

It is undisputed that the prime contractor originally approached a relatively new company, Code 4 Systems, Inc. ("Code 4"), to become the subcontractor to

3

complete the fiber optic network for the fire alarm project. Code 4 needed money up front to take on the project but was unable to secure advance funding through a factoring company[1]. Code 4 contacted Capital Computer, with whom Code 4 had worked on many other projects in the past. Capital Computer, being a more established company that completed electronic and computer hardware installation projects around the country, was able to secure funding through the factoring company. Capital Computer and Code 4 made arrangements with the prime contractor for Capital Computer to become the subcontractor for the project and sub-subcontract all the work to Code 4. Code 4 agreed to pay Capital Computer 4% of the invoices and all the fees of the factoring company.

The terms of the subcontract were agreed upon by the prime contractor, Capital Computer, and Code 4. Under the subcontract, Capital Computer agreed to install a fiber-optic network for the fire alarm system on behalf of the prime contractor. With the knowledge and consent of the prime contractor, Capital Computer hired out the entire scope of work to Code 4. As required under the subcontract, Capital Computer maintained insurance for the benefit of the prime contractor and agreed to indemnify the prime contractor for losses resulting from

---

[1] The factoring company was to buy Code 4's accounts receivables at a discounted price and pay Code 4 in advance of completing the project.

4

the work.

### III. Discussion

Gray contends that Capital Computer is not entitled to seek payment on the Miller Act bond because the subcontract was a sham. The subcontract between Capital Computer and the prime contractor, however, legally obligated Capital Computer to install a fiber optic network for the fire alarm project on behalf of the prime contractor. Capital Computer also maintained insurance for the benefit of the prime contractor and agreed to indemnify the prime contractor against loss. Far from being a sham, Capital Computer's subcontract placed real obligations upon Capital Computer to complete the work and protect the prime contractor.

In determining whether one is a subcontractor under the Miller Act, the "substantiality and importance" of the relationship between the subcontractor and the prime contractor is what matters. F.E. Rich Co. v. United States ex rel. Indus. Lumber Co., 417 U.S. 116, 123-24, 94 S.Ct. 2157, 2162 (1974). Here, Capital Computer provided insurance for the prime contractor and agreed to indemnify the prime contractor, which indicates that Capital Computer's relationship with the prime contractor was substantial and important. Id. at 123-24, 94 S.Ct. 2162 ("It is the substantiality of the relationship which will usually determine whether the prime contractor can protect himself, since he can easily require bond security or

5

other protection from those few 'subcontractors' with whom he has a substantial relationship in the performance of the contract.").

Capital Computer also functioned as a subcontractor under the Miller Act, as "one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract."  J.W. Bateson, Co., Inc. 434 U.S. at 590, 98 S.Ct. at 875-76.  Capital Computer actually followed through on its obligation and furnished labor and materials for the fire alarm project.  The fact that Capital Computer fulfilled its obligation by sub-subcontracting with Code 4 did not invalidate Capital Computer's relationship with the prime contractor. The subcontract specifically allowed Capital Computer to hire out its entire scope of work.  Furthermore, the prime contractor was aware that Code 4 would be performing the work for Capital Computer.

Gray relies on Capital Computer's financial relationship with Code 4 to argue that Capital Computer was merely a financier, not a subcontractor.  Gray cites to cases holding that one who solely loans or advances money cannot recover on a bond issued under the Miller Act.  See United States ex rel. Wulff v. CMA, Inc., 890 F.2d 1070, 1072 (9th Cir. 1989); United States ex rel. First Cont'l Nat'l Bank & Trust Co. v. W. Contracting Corp., 341 F.2d 383, 387 (8th Cir. 1965). This case is very different, however, because Capital Computer was not merely a

6

financier.

Capital Computer had a subcontract to perform the work. The subcontract was not a sham. The subcontract imposed substantial and important obligations that were not diminished by Capital Computer's financial arrangement with Code 4. Capital Computer, with the knowledge and approval of the prime contractor, fulfilled its obligation to provide labor and materials on the project by hiring out the work to Code 4. The work was satisfactorily performed.

From all indication, had this case not involved a government contract, Capital Computer would have been able to protect itself from non-payment through a lien. Because the Miller Act is to be liberally construed to carry out its remedial purpose, we find that the district court did not err in granting summary judgment in favor of Capital Computer on its Miller Act claim.

**AFFIRMED.**